THE STATE, CORNELIUS CAULFIELD, PROSECUTOR, v. THE MAYOR AND ALDERMEN OF JERSEY CITY.

Submitted December 5, 1898—Decided February 27, 1899.

The discharge by a city of an honorably-discharged Union sailor because of the abandonment of the pumping-station at which he was employed, and the abolition for economical purposes only of useless placeholders at such station, is not in contravention of the provisions of the "Act regarding honorably-discharged Union soldiers and sailors," approved March 14th, 1895.

On *certiorari.*

Before Justices LUDLOW and COLLINS.

For the prosecutor, *McEwan & McEwan.*

For the defendant, *John Wahl Queen.*

The opinion of the court was delivered by

LUDLOW, J.  As this case is presented to us on the respective briefs, the only question raised is as to the good faith of the city (defendant) in abolishing the position of general workman at the Belleville pumping-station and discharging the prosecutor therefrom, June 11th, 1898.

The case shows that the prosecutor went into that position in October, 1889, by appointment under resolution of the board of street and water commissioners, concurred in by the board of finance and approved by the mayor of said city; salary, $55 per month; duties general—any kind of work as ordered.  About 1896 public necessity compelled a change in the water-supply system of Jersey City, and resulting therefrom, pumping at Belleville was done away with in the latter part of 1897, and the force of men there employed being no longer required, was ordered to be reduced, and by resolution of the above board, approved by the mayor October 21st, 1897, Mr. Caulfield, with others, was discharged.  He notified

the board that he was an honorably-discharged Union sailor —veteran—and there appears to have been several months' delay thereafter in the action of the board as to the reduction of the force, during which time Mr. Caulfield's name was kept on the pay-roll, shifting it about sometimes as "fireman" and sometimes as "general workman"—seemingly in order to save him—he all the while drawing full monthly pay; but in the early part of May, 1898, the mayor and board of finance, as a matter of necessary public economy in the city government, directed that all useless positions at Belleville should be abolished and all useless employes there should be discharged.   Thereupon the force at Belleville station was at once reduced to four, viz., three gatekeepers and one machinist, who were fitted for the sort of work remaining to be done there, and who were also to do all other necessary work required at that place which might formerly have been done by the other employes who were discharged.

It appears that thereupon the aforesaid street and water board, by resolution of May 18th, 1898, approved by the mayor on May 20th, 1898, abolished the position of "fireman" at Belleville, and as the prosecutor's name had appeared several times as "fireman" on the pay-roll, he was notified that his services were dispensed with.

Mr. Caulfield again suggested to the board that he was a veteran, and he also intimated to them that he was never appointed "fireman," and he held on.   His name appeared on the pay-roll for the month ending May 31st, 1898, as general workman, for work at $2 per day, for thirty-one days—$62.   He remained until June 1st, 1898, and then ceased work, and left after drawing his pay of $62, as above. Afterwards the aforesaid board, by resolution of June 8th, approved by the mayor June 11th, 1898, dispensed with the prosecutor's services as general workman at Belleville and abolished that office.   In the following July the prosecutor brought this *certiorari,* seeking to nullify the aforesaid resolutions and action of the said boards and the city, for the reason, as he alleges, that said resolution and action, all and

singular, were in contravention of the provisions of the Veteran act of 1895 (*Pamph. L., p.* 317; *Gen. Stat., p.* 3702), and especially of section 3 of that act—" that it shall not be lawful for any board, &c., to abolish any position or office held by any honorably-discharged Union soldier, sailor, &c., for the purpose of terminating the services of any such employe."

The prosecutor insists that said three several resolutions, which he says were three several attempts to oust him from his employment, indicate the intent and desire of the said defendant city or its board to violate the said third section of said act, and that by abolishing the position which he held for the purpose, as he alleges, of terminating his service as such employe, they did violate the said provisions of said act, and that their resolution should be nullified. This theory of the prosecutor is decidedly far-fetched and is entirely at variance with the facts of the case, and is unsupported by any evidence. There is no proof of any such unlawful or improper purpose on the part of the city or its board in abolishing prosecutor's position or in his discharge, such as he alleges. The evidence in the case shows that the abandonment of pumping at Belleville was a public necessity, and that as a consequence the force of employes there became useless except as to four competent caretakers (three gatemen and one machinist), and that the city, as a matter of public economy only, and only for economical reasons and purposes, abolished useless places and discharged useless placeholders at said station, the prosecutor's place and himself being necessarily included. Such *bona fide* action on the part of the city was not in any way a violation of the provisions of the Veteran act above referred to. *Beirne* v. *Jersey City,* 31 *Vroom* 109; *Sutherland* v. *Jersey City,* 32 *Id.* 436.

The resolutions and the action of the city abolishing the position held by the prosecutor and dispensing with his services therein, discharging him therefrom, are affirmed, with costs.