[No. 11157. ·Department One.   June 28, 1913.]

THE STATE OF WASHINGTON, *on the Relation of Edwin A. Voris, Respondent,* v. THE CITY OF SEATTLE *et al., Appellants.*[1]

MUNICIPAL CORPORATIONS—OFFICERS AND EMPLOYEES—CIVIL SERVICE —POWER TO ABOLISH OFFICE.   The abolishment of .an office with several others in order to reduce the force in the interests of economy and combine the duties of several offices is not a removal from office, within the civil service rules; and hence an ordinance abolishing an office is not invalid in that the duties of the office still remained and another ordinance provided that they should be performed by a clerk engaged a part of his time in other work.

SAME—POWER TO ABOLISH OFFICE.   The courts cannot inquire into the motives of a city council in abolishing an office within the civil service rules, if the ordinance is fair on its face and does no violence to any provisions of the charter or law.

SAME—GOOD FAITH.   An ordinance abolishing an office in order to reduce the force is not shown to have been passed in bad faith by the fact that the clerk upon whom the duties devolved received an increase in salary and was not able to keep up with his work, nor by testimony tending to show that the head of the department affected acted in bad faith; especially where the ordinance at the same time abolished four other positions and reduced the working force by five men.

Appeal from a judgment of the superior court for King county, Smith, J., entered February 14, 1913, upon findings in favor of the relator, in a proceeding to try title to office. Reversed.

*James E. Bradford* and *William B. Allison,* for appellants.

*Preston & Thorgrimson* and *Sanford C. Rose,* for respondent.

CHADWICK, J.—The trial judge filed a memorandum decision in this case.   He found the facts to be as follows:

"In May, 1911, there occurred a vacancy in the office of the city comptroller for the place of real estate clerk, a

[1]Reported in 133 Pac. 11.

position recognized by classification under the civil service system. An emergency having arisen, relator Voris was appointed by the comptroller pending civil service regulations. In June, upon investigation by the secretary of the commission of the duties required for the position of real estate clerk, it was classified as that of abstracter and real estate clerk, and the comptroller notified that an original examination must be held for the position. Relator in November having successfully passed the examination, received the regular appointment of file and real estate clerk, which seems to be another designation of abstracter and real estate clerk. On April 30, 1912, the city council, by Ordinance 29343, ordained that the position of file and real estate clerk in the department of city comptroller be abolished, and on the same day the comptroller reported to the commission the separation of Voris from his department, alleging the cause to be on account of the reduction of force. On May 6th, 1912, the council, by Ordinance 29380, established the salary of detail clerk in charge of index and real estate record work at $100 per month. Thereupon the commission notified the comptroller that, inasmuch as a separate classification had been provided for this position, the work should be done by none except those regularly qualified for the same. The comptroller, ignoring the communication, notified the commission June 7th that he had given the increase of salary made by Ordinance 29380 to R. F. Farren as detail clerk. On June 29th Voris appealed for investigation by the commission of the reasons for his dismissal. Such investigation was had, and on September 26th, 1912, the commission found Voris entitled to the office held by Farren, and recommended that he be returned to the position as the employee rightfully entitled to the same. The comptroller having refused to comply with the recommendation of the commission, relator Voris has brought this action."

It may be inferred from this statement that the position occupied by the relator was the only position abolished by the council. This is not true. The ordinance of which he complains abolished several positions and the new ordinance seems to have been designed to combine their several duties with that of others. From these facts, the court concluded that the office in which the relator had been employed had

been abolished in name only, and that the relator was entitled
to reinstatement, with his salary from the time of his sepa-
ration from the office.  The question put by the trial judge
is, Was the office abolished?  It is not denied that the city
council has the power to abolish a position, but it was the
opinion of the court below, and is the opinion of counsel for
the relator, that the council could not declare an office abol-
ished unless "in fact the duties themselves were abolished":

"The testimony before the court clearly established the ex-
istence of the duties as formerly, but their transference to
another clerk.  Owing to varying changes of conditions the
duties at times have been more or less numerous than formerly,
but there is no dispute of the fact that the same duties of
the alleged abolished position remain to be performed and
still continue to occupy another clerk from one-half to two-
thirds of all his time."

We think the court has gone further than the law warrants.
The council has the right to create offices and it may abolish
them, or it may, in the interest of economy and efficiency,
combine the work of several employees so that their duties
will be thereafter performed by a lesser number of men.  In
this case the city council has done no more than this.  It
abolished the position of "file and real estate clerk" and by
another ordinance provided that the work formerly done by
that employee should be done by "a detail clerk in charge of
index and real estate record work in clerk's division."  The
testimony, and most of it is in our opinion irrelevant, shows
that Farren, the present employee and a civil service man, is
doing a part of his old work as well as the work formerly
done by Voris.  Relator undertook to show that he was not
keeping up with his work.  That is a matter with which
courts have nothing to do.  So long as he is performing,
either in whole or in part, the work that he formerly did, his
right to remain in the office of the comptroller is greater
than is the right of the relator to be reinstated.  An employee
cannot be removed to make way for one who is in the same
legal position.  In other words, the work formerly done by

Voris being combined with that formerly done by Farren, neither the civil service commission nor the courts have power to·say that a present employee shall give way to one who insists upon the right to perform a part only of the present duties of the existing position.

In the instant case, the object of the ordinance was to work a reduction of the force. We are informed by counsel, on oral argument, that there was an actual reduction under the ordinance complained of, of five men. We may assume that this could only be done by combining the work previously done by the greater number, and this the council had a lawful right to do under its general powers, as defined in §§ 18, 19 and 41, art. 4 of the charter.

Much of the brief of the respondent is taken up with a discussion that goes to the good faith of the city council in abolishing this office. Courts will not inquire into the motives of the legislative body. If the ordinance or law is fair upon its face and does no violence to any provision of the city charter or the constitution, it will be upheld. This ordinance is fair upon its face. It suggests nothing unless it be a purpose to work economy. If the rule were otherwise, it would be impossible for the governing body of a city to change, rearrange, or redefine the duties of its employees, so long as any one of them had been classified by the civil service commission and had a scintilla of work to perform.

The case of *Fitzsimmons v. O'Neill*, 214 Ill. 494, 73 N. E. 797, is a valuable authority in that it deals with a case similar to the one at bar and reviews many authorities. A foreman in the city repair shop was laid off for the reason that no appropriation had been made to meet his salary. He demanded reinstatement, contending that the duties of his position had not been abolished, and could not be abolished, as it was essential to the proper management of the repair department that there should be a superintendent. It was further made to appear that the duties which had been performed by him were performed by others; that those who

had been doing the work were not superintendents; that one of them was a wagonmaker and the other a laborer. Relator insists that the work of real estate clerk must be done by an abstracter, and that Farren was never qualified as such. The case is a stronger one than is this, for the reason that it is alleged "that neither of these men, while performing duties formerly performed by the petitioner, performed the duties pertaining to their former position, but devoted their entire time to the duties formerly done by petitioner." In all things the right to reinstatement is based on the same grounds as the relator sets up in his petition. It was held that the plaintiff in that case could not reinstate himself. It was contended there, as here, that the removal was illegal, but the court held that the civil service rules do not apply to a case where the incumbent is dismissed for want of funds, or in order to reduce expenses.

In *Phillips v. Mayor etc. of New York*, 88 N. Y. 245, a clerk of the fire department of the city was discharged, not for any personal reason, but because it was necessary for the department to conform its expenses to a smaller appropriation, thus necessitating a reduction of the clerical force. It was held that the civil service rules did not apply; that it was not a case of removal within the meaning of those rules. The court said:

"He [plaintiff] could not claim that the office or clerkship should be retained for his benefit, and the fire commissioners were not obliged to consult him before abrogating it."

In *Langdon v. Mayor etc. of New York*, 92 N. Y. 427, a clerk in the financial department of the city was separated from the service and his removal was sustained as not in violation of the civil service rules, for the reason that "the business of the department had so diminished that the plaintiff's services were not needed." In *People ex rel. Corrigan v. Mayor etc. of Brooklyn*, 149 N. Y. 215, 43 N. E. 554, speaking of the civil service statutes, the court said:

"While these statutes are positive in form, it is clearly not their intent to give to occupants of such positions a life tenure where upon grounds of economy or for other proper reasons the office or position is in good faith abolished."

A case which we conceive to be more in point is that of *People ex rel. Hartough v. Scannell,* 48 App. Div. 445, 62 N. Y. Supp. 930. The relator, a civil war veteran, was employed as "an inspector of fire hydrants." He was discharged, and duties similar to those theretofore performed by him were performed by persons who were not veterans. The court found the real question to be: "Whether . . . the fire department had the right to abolish the position held by the relator without notice and hearing, so long as other laborers, not veterans, were retained in the service."

"We are thus left to the question whether the position which the relator had was abolished in good faith and for reasons of economy. This was a question of fact. It appears that 16 other veterans, occupying positions similar to that of the relator, were removed in January, 1898, and that there was evidence tending to show that this was done so as to bring about uniformity in the rules and method of inspecting fire hydrants over the entire city by extending over Brooklyn and Queens the rules which had been in existence for many years in the old city of New York, the duty in the boroughs of Brooklyn and Queens being devolved upon the fire department instead of the water department, and that this was done from motives of economy. In such a change, standing alone, we can see no evidence of bad faith on the part of the commissioners."

Judge Dillon finds the law to be:

"The *purpose of the civil service statutes* and of other laws prohibiting the discharge of employees without cause assigned, notice, and a hearing, is to insure the continuance in public employment of those officers who prove faithful and competent, regardless of their political affiliations. These statutes are not intended to affect or control the power of the city council or the executive officers of the city to abolish offices when they are no longer necessary or for reasons of economy. They are not intended to furnish an assurance to

the officer or employee that he will be retained in the service of the city after the time when his services are required. They do not prevent his discharge in good faith without a trial and without notice, *when the office or position is abolished* as unnecessary or for reasons of economy. But although the operation of these statutes does not prevent the abolition of an office in good faith, the local authorities have no power to discharge an officer or employee of the city *upon the pretence* that his office is abolished and immediately thereafter assign another person to do the same work which has been done by the discharged employee. . . ." 2 Dillon, Municipal Corporations, 479.

See, also, *People ex rel. Moloney v. Waring*, 7 App. Div. 204, 40 N. Y. Supp. 275; *Caulfield v. Jersey City*, 63 N. J. L. 148, 43 Atl. 433; *In re Kelly*, 42 App. Div. 283, 59 N. Y. Supp. 30; *People ex rel. Nason v. Feitner*, 58 App. Div. 594, 69 N. Y. Supp. 141; 28 Cyc. 445, 594.

The council having the right to abolish the position occupied by relator, it would be an unwarranted usurpation for the courts to go beyond the question of the good faith of that body. We find nothing in the record to overcome that presumption of regularity and integrity which attends every act of a co-ordinate branch of the government. If there was anything proven that would challenge the good faith of the council, the fact that five positions were abolished in the ordinance which abolished the relator's position is a sufficient answer, and enough to sustain our holding that the motive of the council was pure and prompted by a disposition to work economy. It would certainly be harsh doctrine to hold that a city council cannot reduce the expenses of a department. As has been held, the council can abolish an office and refuse to make an appropriation to pay the employee. If this is so, it cannot be denied that the same power can combine two or more positions in one. We think this case is controlled by the authorities cited and commented upon. In passing, it may not be out of place to say that many of the cases to which we have referred grew out of departmental

orders, whereas we have had to deal with an expression of the law making body.

Nor do we find anything in *Gilmur v. Seattle*, 69 Wash. 289, 124 Pac. 919, or *State ex rel. Powell v. Fassett*, 69 Wash. 555, 125 Pac. 963; *Foster v. Hindley*, 72 Wash. 657, 131 Pac. 197, or *State ex rel. Cole v. Coates, ante* p. 35, 132 Pac. 727, that in any way qualifies our view of this case. Those cases are in line with the general rule laid down by Judge Dillon and admitted in all the cases we have cited. In the *Gilmur* case, the court found that the position had been changed only in name. The plaintiff was "a foreman of outside construction." The council passed a new ordinance creating the position of "foreman pole gang, such position being intended to cover the position then held by respondent, to wit, that of foreman of outside construction." The case was decided in favor of the plaintiff because "his duties remained the same after the passage of the second ordinance, and the title of his office is of no moment." If the relator in this case were reinstated, his duties would not be the same. He would have to take the place now occupied by Farren and perform additional duties. This fact distinguishes this case from the *Gilmur* case.

In the case of *Foster v. Hindley*, the employee of the city was dismissed from the services by the mayor, for the reason, as stated by that officer, that "the office that you now hold is discontinued." As required by the civil service rules, the mayor reported the cause of the separation to be "reduction of force." We held that the office was not discontinued; that the council, and not the mayor, had power under the charter to abolish offices. Here we have the act of a council with power "to modify or abrogate from time to time as the needs of the city shall require, all proper offices and bureaus, and to provide for the conduct and government of such offices and bureaus, and the appointment, removal, duties, and compensation of officers, . . ." The *Powell* case is so clearly without significance here that it needs no

comment. The *Cole* case, as does the *Powell* case, holds that a civil service employee cannot be removed without cause, and further, that a change in the method of compensation, although under a different title, did not change the nature of the employment; that the right of employment is to be determined from the character of the service performed by the new employee as compared with the services which had been performed by the ousted employee. In the case at bar, the council, having authority so to do, has destroyed that standard of comparison. In a negative way that case sustains our present holding.

The supreme court of Illinois was called upon in *Fitzsimmons v. O'Neill, supra,* to distinguish a former decision. In the case of *Chicago v. Luthardt,* 191 Ill. 516, 61 N. E. 410, the court had held as we held in the *Gilmur* case. The court distinguished the earlier case, saying:

"There, the common council merely changed the name of the official but did not change his duties, and made an appropriation for the salary of the same office by another name. No such facts exist in the case at bar. The appropriation bill here did not designate the foreman of the repair shop by another name, nor appropriate any salary for his successor acting under another name."

That Farren, the present incumbent, has had an increase of salary and has not been able to keep up with his work, can have no bearing. These facts do not indicate bad faith. *People ex rel. Steers v. Department of Health of New York,* 86 App. Div. 521, 83 N. Y. Supp. 800. If the council errs in its judgment when it passes an ordinance combining two positions, the courts are powerless to correct the mistake. In the case just cited it is said: "If, in good faith, a department initiates a policy of enforced economy, but goes too far . . . that affords no reason for the reinstatement of a subordinate."

Nor does the testimony offered to show that the comptroller has acted in bad faith have any bearing. Whatever his design may have been, it is lost in the ordinance. Our con-

clusion is that the ordinance was passed in good faith and in the interest of economy, and not for the purpose of circumventing or evading the civil service act; that the function of the civil service commission, so far as the abolished position is concerned, has been performed. It may classify the present position and require an examination, but it cannot supplant a present employee of equal right to make way for one who claims under a position that is abolished. This court has been extremely liberal in upholding the powers of the civil service commissions of our cities. Notwithstanding the sentiment which sustains laws providing for classified civil service, there must be a limit to the right of such commissions to impose employees upon a city. A limitation is found in the power of the council to legislate, and in the right of the taxpayers to insist on economy in the administration of public affairs. This conclusion makes it unnecessary to discuss the remaining assignments of error.

The judgment of the lower court is reversed, and remanded with instructions to enter a judgment of dismissal.

Gose, Mount, and Parker, JJ., concur.