PIOVANETTI, PLAINTIFF AND APPELLANT, v. MUNICIPAL ASSEMBLY OF YAUCO, DEFENDANT AND APPELLEE.

Appeal from the District Court of Ponce in Certiorari Proceedings.

No. 2847.—Decided February 19, 1923.

MUNICIPALITIES — MUNICIPAL OFFICERS — CONSTITUTIONAL LAW — ABOLITION OF MUNICIPAL OFFICES.—A municipal office is not property in the constitutional sense and the Legislature may abolish an office during the term for which the incumbent was elected or appointed without violating any of his constitutional rights. Likewise, an office created by a municipal ordinance may be abolished by an ordinance and the incumbent ceases to be an officer. Even when, by reason of his having been appointed for a definite term or by a special statute, an officer can not be lawfully removed except for good cause after a hearing, his office may be summarily abolished whenever the proper municipal authorities consider it advisable.

ID.—CERTIORARI—JURISDICTION—MOTIVES OF LEGISLATORS.—In reviewing legislative acts of municipal assemblies by certiorari, as authorized by section 65 of the Municipal Law, the inquiry should be limited to whether the assembly had jurisdiction or exceeded it, whether the procedure followed in exercising it was erroneous, or whether the assembly acted *ultra vires*. To inquire into the motives of the legislators is to overstep the power conferred upon the courts in such cases.

ID.—ID.—ANSWER—RETURN.—The fact that no answer is filed to the petition in certiorari does not imply an admission of the allegations of the petition. In certiorari proceedings the return is the answer.

The facts are stated in the opinion.

Mr. C. del Toro Fernández for the appellant.

Mr. C. Brunet for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

In May of 1922 the Municipal Assembly of Yauco passed an ordinance whose dispositive part reads as follows:

"Therefore, be it resolved by the Municipal Assembly of Yauco, P. R.—Section 1.—That by virtue of the power conferred upon the municipal assemblies by the proviso of section 29 of the Municipal Law approved July 12, 1920, the Municipal Department of Public Education is hereby consolidated with the Department of Charities and on and after July 1, 1922, the department so formed shall be called the Municipal Department of Charities and Public Education."

Domingo Piovanetti, who held the office of municipal commissioner of education, petitioned the District Court of Ponce to issue a writ of certiorari and annul the said ordinance. The court issued the writ, heard the parties and on June 22, 1922, rendered judgment denying the petition and discharging the writ. From that judgment Piovanetti took the present appeal.

The proceeding brought by the appellant in the district court was that authorized by subdivision (a) of section 65 of the Municipal Law, Act No. 85 of July 31, 1919, which reads as follows:

"Section 65.—That on motion of the aggrieved party the courts of justice shall have jurisdiction—

"(a) To annul or review by writ of certiorari any legislative or administrative act of the municipal assembly, council of administration or commissioners, which infringes the constitutional rights of the complainant or which is contrary to the Organic Act or the laws of Porto Rico; *  *  * "

Did the ordinance in question infringe the constitutional rights of Piovanetti, or is it contrary to the Organic Act or the laws of Porto Rico? The district court found that it did not and is not. Let us see whether the court was right.

Section 29 of the Act establishing a system of local government and reorganizing municipal services, *supra,* reads, in so far as pertinent, as follows:

"Section 29.—That the council of administration shall be composed of—

"1. A municipal commissioner of public service, police and prisons.

"2. A municipal commissioner of health and charities.

"3. A municipal commissioner of finance.

"4. A municipal commissioner of public works.

"5. A municipal commissioner of public education.

"*Provided,* That no other administrative department, not provided for herein, shall be created by the municipal assembly; but, in municipalities of the second and third class the municipal assembly may consolidate departments though in no case shall the departments in any municipality be less than three."

This section of the Municipal Law was amended by Act No. 9 of 1920 and Act No. 60 of 1921, but the paragraphs transcribed were not changed.

The power conferred by the Act upon the municipal assembly to do what it did in this case is so clear that an attack upon the ordinance in the sense that it is contrary to law is wholly unfounded.

Did the assembly, in the exercise of its authority, infringe the constitutional rights of the complainant? We think not.

Summing up the jurisprudence with regard to the abolition of municipal offices, Ruling Case Law says:

"A municipal office is not property in the constitutional sense, and the legislature may abolish an office during the term for which the incumbent was elected or appointed without violating any of his constitutional rights. So also an office created by municipal ordinance may be abolished by ordinance, and the incumbent ceases to be

an officer.  Even when an officer by reason of having been appointed for a definite term, or by special statutory provision, can not be lawfully removed except for cause after a full hearing, his office may be summarily abolished whenever the proper municipal authorities deem it advisable."   19 R. C. L. 936.

And in the case of *Belaval* v. *Todd*, 24 P. R. R. 24, this court expressed itself as follows:

"The construction which this court places upon section 32 to the effect that when an employee is appointed he can not be removed except for just cause, after notice and a hearing, in nowise affects the power of municipal councils to abolish offices created by them. If a person is appointed to an office created by the council, he is entitled by law to discharge the duties of that office during its existence; but if the office is abolished, the appointment ceases and the appointee has no claim whatever against the municipality."

Did the assembly depart from the procedure established by law in exercising its powers?  There is nothing in the record to show that it did.  But the appellant insists that the assembly acted erroneously, the real motive for the consolidation not being the good of the public service, but the unlawful removal of the complainant from the office to which he had been duly elected.

The court can not go into this feature of the matter.  It is true that the Legislature of Porto Rico went so far as to allow the review of both the administrative acts and the legislative acts of municipal assemblies, but when the courts review such acts in certiorari proceedings it must be done in accordance with the principles well established by jurisprudence.

The inquiry should be limited to whether the assembly had jurisdiction or exceeded it; whether the procedure followed in exercising it was erroneous, or whether the assembly acted *ultra vires*.  To inquire into the motives of the lawmaker is to overstep the power conferred upon the courts in such cases.

"Courts will not inquire into the motives of the legislative body." *State* v. *City of Seattle,* 74 Wash. 199, 133 Pac. 11.

It is not necessary to consider the other assignments made by the appellant. They do not appear from the return. The fact that no answer was filed in opposition to the petition does not indicate, as the appellant maintains, an admission of all of the allegations in the petition for a writ of certiorari. This was not an ordinary action, but an extraordinary certiorari proceeding in which the full record of the proceedings, or the return, by virtue of which the Municipal Assembly of Yauco acted constitutes the real answer. See the case of *Rodríguez* v. *Municipal Assembly of Guánica, ante,* page 126.

For the foregoing reasons the judgment appealed from must be

*Affirmed.*

Justices Wolf, Aldrey, Hutchison and Franco Soto concurred.