Ernesto Cruz Andréu, Petitioner and Appellant, *v.* Rafael Buscaglia, Treasurer of Puerto Rico, et al., Respondents and Appellees.

No. 8613.   Argued January 13, 1943.—Decided April 7, 1943.

*Celestino Iriarte, F. Fernández Cuyar,* and *H. González Blanes* for appellant. *M. Rodríguez Ramos, Acting Attorney General,* and *G. Benítez Gautier, Deputy Attorney General,* for appellees.

Mr. Justice Travieso delivered the opinion of the court.

The essential facts in this case, as to which there is no dispute, are as follows:

The petitioner has been for more than 20 years an employee of the Insular Government within the Classified Civil Service; and from October 1, 1935, he held the position of Chief and Accountant of the Collection and Claim Division of the Bureau of Property Taxes in the Department of Finance, by virtue of appointment by the Treasurer of Puerto Rico with the approval of the Civil Service Commission.

On March 3, 1942, the petitioner was informed by the Treasurer that in accordance with the provisions of Law No. 41, approved November 21, 1941 (Spec. Sess. Laws, p. 152) he had appointed him "Inspector, Bureau of Income Taxes," with the same salary of $2,200 yearly that the petitioner had been receiving. The new appointment was to take effect on February 19, 1942.

In the petition filed in the District Court of San Juan it is prayed that a writ of mandamus be issued ordering the Treasurer to reinstate the petitioner in his position as Chief and Accountant of the Attachment, Collection, and Claim Division, and to include him in the pay roll lists of salaries that correspond to that position. The allegations contained in said petition are, in summary, the following:

That the petitioner is not eligible nor has the requisite qualifications for the new position to which the Treasurer has appointed him, which is of a different nature and requires different examinations from the ones taken and passed by the petitioner for the position of accountant.

That the action of the Treasurer tends to deprive the petitioner of his position as accountant, in the enjoyment of which he is protected by the Civil Service Law, by appointing him to another position in which he would not be thus protected, it not being certain, first, that the Treasurer will leave the petitioner in his new position; second, that the petitioner will pass the examination for the position of inspector; and, third, that even if he passes said examination, that the Treasurer will give him preference for a permanent appointment.

That the petitioner does not want to lose the protection to which he is entitled under the Civil Service Law; that he does not want and has not asked for the position as inspector, because he does not have the knowledge, experience, and ability necessary for that position.

That the Treasurer of Puerto Rico, upon being interviewed by petitioner's attorney, so as to see if the Treasurer would reconsider his order, told the said attorney that he wanted to put in the position of accountant held by the petitioner another person whose actions in a different position had cast suspicion upon him; that the refusal of the petitioner to comply with his order could be interpreted as an act of insubordination; that if the petitioner proceeded in the courts he would consider such action as highly regrettable and that that would create a very difficult situation in the Department, the consequence of which would be regretted by the petitioner.

That the person appointed by the respondent to replace the petitioner in his position as accountant refused the appointment and instituted legal action against the respondent.

That by the middle of the month of March 1942, the Treasurer sent the petitioner a check as compensation for services as Inspector of the Bureau of Income Taxes, which position the petitioner had not accepted and did not intend to accept. The petitioner did not accept said check.

That the acts of the Treasurer constituted a flagrant violation of the provisions of §§28, 31, and 32 of the Civil Service Law (Act No. 88 of 1931, Session Laws, p. 534) and caused irreparable damage to the petitioner by depriving him of the rights and privileges granted and secured to him by law.

That the provisions of Act No. 41 of 1941, under which the respondent has acted, are void and unconstitutional, but that even if they were legal and valid, they did not authorize the Treasurer to remove the petitioner from his position, and that they likewise do not render ineffective the provisions of the Civil Service Law.

On May 1, 1942, the petitioner filed a supplementary petition, in which he alleged: That after the respondent had been notified of the petition for mandamus, he gave instructions to the Chief of the Bureau of Taxes for the immediate removal of the petitioner from his position; that by letter of April 28, 1942, delivered to the petitioner on the 29th of the same month, the Treasurer asked the petitioner to refrain from going to the Bureau of Taxes; and that the petitioner answered said letter through his attorney, informing the Treasurer that in obedience to his order he would leave his position, but that he did this against his will and without prejudice to continuing the legal action that he had started to obtain his reinstatement to his position as Accountant with all the inherent legal rights pertaining thereto.

The Treasurer demurred to the petition because it did not state a cause of action, and in his answer he alleged:

1. That the position of "Chief of the Section and Accountant" that the petitioner held was abolished by the General Appropriation Act, Act No. 179 of May 14, 1941 (Laws of 1941, p. 1068), which in its place created a new position named "Chief Clerk and Accountant," for which the petitioner was appointed, his appointment to take effect on July 1941; that when he appointed the petitioner to the position

of Inspector in the Bureau of Income Taxes, the Treasurer acted in accordance with Act No. 41 of November 21, 1941 (Spec. Sess. Laws, p. 152); that said position of Inspector is identical or very similar to the one that the petitioner previously held as Chief Clerk and Accountant in the Collection and Claim Division; that it pays the same salary and its duties and powers are identical; that it is not true that the petitioner is not qualified for his new position because it is similar to the one he previously held; that by assuming the position to which he has been appointed by the Treasurer the petitioner will not lose the protection given him by the Civil Service Law since the appointment was made in accordance with said Law; and that the Treasurer in accordance with the Law of November 21, 1941, has the right to classify the petitioner and to determine the position to which he is to be appointed. The Treasurer also alleges that the provisions of Act No. 41 of 1941 do not render ineffective the provisions of the Civil Service Law with regard to the manner in which a public officer can be removed from office and that there is no conflict between both laws; and he claims that all the employees of the Department of Finance ceased in their offices on February 18, 1942, by virtue of Act No. 41 of 1941.

On July 8, 1942, the District Court of San Juan entered judgment declaring that Act No. 41 is valid; that in accordance with it the Treasurer was empowered to classify and determine the positions to which the employees of the Department of Finance were to be appointed; and that the reinstatement of the petitioner to his old position was not proper.

In his appeal before this court the petitioner-appellant charges that the court below committed five errors, all of which will be considered jointly, as if it were only one assignment of error.

In Act No. 173 of May 5, 1940 (Laws of 1940, p. 1000) containing the appropriations for the year 1940–1941 under Bureau of Property Taxes, the following items appear:

"*Attachment Division:*
"Chief of Division, with all the powers conferred
  on internal-revenue agents, $2, 400. 00
"Clerk, 1, 140. 00
"Clerk and messenger, 600. 00
"Two clerks, at $812.25 each, with all the powers
  conferred on internal-revenue agents, 1, 624. 50
"*Collection and Claim Division:*
"Chief of Division and accountant, 2, 200. 00
"Claim clerk, 2, 052. 00
"Clerk, 1, 425. 00
"Assistant claim clerk, 1, 140. 00
"Clerk, 950. 00
"Clerk, 1, 140. 00
"Clerk, 1, 000. 00
"Three clerks, at $812.25 each, 2, 436. 00
"Clerk, 900. 00:"

The General Appropriation Act for 1941–1942 (Act No. 179 of 1941) kept separate the Attachment Division and the Collection and Claim Division, denominating the person in charge of the latter "Chief Clerk and Accountant" instead of "Chief of Division and Accountant" which was the name it was given in the prior budget. On July 1, 1941, the date on which Act No. 179 became effective, the petitioner continued as head of the Collection and Claim Section, under the new name of Chief Clerk and Accountant, with the same salary, and as will later be seen, with the same duties and functions that he formerly had.

Act No. 41 of Nov. 21, 1941 has, in accordance with its title, two main purposes: (*a*) to amend Act No. 179 of 1941 so as to increase the Department of Finance, and (*b*) to reorganize said Department by "creating new Bureaus and Divisions, consolidating others, creating new positions, and increasing salaries." By virtue of the provisions of said

act, the Attachment Division and the Collection and Claim Division that existed under Act No. 179 of 1941 were consolidated to form the Attachment, Collection, and Claim Division, with the following personnel:

| | |
|---|---|
| "Chief of the Division, who shall be a practicing lawyer, | $3, 600. 00 |
| "Chief clerk, with all the powers conferred on internal-revenue agents, | 2, 400. 00 |
| "Clerk, | 1, 140. 00 |
| "Two clerks, at $812.25 each, | 1, 624. 50 |
| "Clerk and messenger, | 600. 00 |
| *"Clerk and accountant,* | 2, 200. 00." |

(The remaining personnel, is the same as that for the previous year.)

The petitioner-appellant contends that his position being within the classified service, the Treasurer could not remove him from his employment except for justified cause and previous filing of charges, and not without giving him an opportunity to be heard in his own defense, pursuant to §28 of the Civil Service Law.

█ The first question that we must consider and decide is the following: Is the position of "Clerk and Accountant" of the Attachment, Collection, and Claim Division, which appears in Act No. 41 of 1941, the same position that the petitioner held during several years, first under the name of "Chief and Accountant," in the Collection and Claim Section?

From October 1, 1935, until July 1, 1941, on which date Act No. 179—General Appropriations Act for 1941–42—became effective, the petitioner held the position of "Chief and Accountant" of the Collection and Claim Division. From July 1, 1941, the petitioner continued holding the same position, with the same duties and powers, but under the new name of "Chief Clerk and Accountant."

During the trial, Mr. Martínez Casanova, Acting Chief of the Bureau of Property Taxes, testified that the petitioner

held the position of Chief Clerk in the Attachment, Collection and Claim Division in the Bureau of Property Taxes, until April 30, 1942. Mr. Martínez testified in the following manner:

"Q. When you came to hold the position of Chief of the Bureau of Income Taxes, did he already hold that position in the Department of Finance?

"A. He did.

"Q. While you were in the Department of Finance as Chief of that Bureau, did he always have the same duties?

"A. He always had the same.

"Q. That means, did he have them in the years 1939, 1940, in 1941, and in 1942?

"A. Correct."

Act No. 41 was effective immediately upon its approval on November 21, 1941. From that date, the petitioner continued holding the position that he previously held, under the new name of "Chief Clerk," until April 30, 1942, when he was removed from his position because he refused his appointment to another position in which he would not be protected by the Civil Service Law.

The above-stated facts and circumstances lead us to the inevitable conclusion that the position from which the petitioner was removed on April 30, 1942, is the same that he had been holding, to the satisfaction of his superiors, since the year 1935. That the court below was of the same opinion can be inferred from the following question put by it to the Treasurer: "I would like to know whether this law permits an employee *whose position has not been abolished* to be transferred to another *different* position with an equal or higher salary." (Italics ours.)

Mr. Francisco Juliá, Chief of the Bureau of Property Taxes from 1931 until December 31, 1941, testified that the position offered to the petitioner in the Bureau of Income Taxes is entirely different from the one that the petitioner held until the date of his removal. The Treasurer's answer

admits that the petitioner has not complied with all the requisites required by the Civil Service Commission for the position of Inspector in the Income Tax Bureau and that said position requires a different examination from the one the petitioner took and passed for the position he held until April 30, 1942.

It is a well-established doctrine that any public position within the Classified Civil Service can be abolished in good faith by the Legislature, since the Civil Service Laws do not guarantee to any public employee the right to hold a position which is no longer necessary. *State ex rel Voris* v. *Seattle,* 74 Wash. 199, 133 P. 11; 4 A.L.R. 198; *State ex rel Ware* v. *Sewerage & Water Bd.,* 160 La. 251, 106 So. 845; Annotation at 37 A.L.R. 816. But the Civil Service Law can not be avoided or ignored through a fictitious or pretended abolition of a position, as for instance, when a mere alteration is made in its name and then the incumbent is removed and another person is named in his place to perform substantially the same duties. Annotation at 20 Ann. Cases 247; *Garvey* v. *Lowell,* 199 Mass. 47, 85 N. E. 182; *State ex rel. Quintín* v. *Edwards,* 40 Mont. 287, 106 P. 695. See *Rosario* v. *Cuevas, Commissioner,* 60 P.R.R. 457.

In the instant case the position that the petitioner held under the protection of the Civil Service Law has not been abolished. Its name has been altered, but its duties continued to be the same ones as provided and during more than seven years the petitioner discharged them to the satisfaction of his superiors. Without sufficient reason there was an attempt to transfer the petitioner from a permanent position in which he is protected by the Civil Service Law in force to another position of equal salary but of temporary character, for which he was required to take and to pass an examination so that he can hold it with permanent status. Thus an employee whom the Treasurer has classified as experienced and efficient is disregarded and an Inspector from the Bureau .

of Income Taxes is appointed to replace him. The Treasurer, testifying before the lower court, explained the need for the change and described the person who was to replace the petitioner in his position, in the following manner:

"Then I told him . . . the need that had arisen because we had an Income Tax Inspector who did not have the confidence of the Income Tax Division, but who was receiving an important salary, and to whom for a long time before I became Treasurer no important Income Tax work was given with relation to the position that he held, and he had been doing only unimportant work which could have been done by any clerk who was receiving no more than sixty to sixty-five dollars monthly, while this gentleman was receiving two thousand two hundred dollars annually.

" *      *      *      *      *      *      *

". . . The opinion with regard to that person was unanimous with regard to the fact that there was doubt as to his honesty and this opinion about him which existed while I was Treasurer, had also been held by others before, since they had already placed him in the position of not giving him any important work, so that no chance was given him. . . . His superior doubted whether he had the moral capability to hold a position which involved such delicate work as the investigation of books with relation to the payments of Income Taxes . . . We are going to transfer this person to a position where he can do a good job in accordance with his appointment, an accounting job but where he would not be in contact with the public."

We can not admit that it is a just and wise rule of morals and integrity for the public service that, in order to remove from the service an employee in whom trust has been lost to such an extent that he is not given work which he is supposed to do so as to avoid that he will come in contact with the public and so as to avoid that he will allow himself to be bribed, it is necessary to transfer him to a position permanently held by an efficient, honest, and experienced employee, placing the latter in a temporary position. It is true that through such proceedings which the Treasurer has attempted to follow in this case, he could rid himself of the employee

whom he distrusts without the need of previously filing and proving charges against him, but it is also true that this proceeding would deprive the petitioner, who is a permanent employee who fulfilled strictly his duties, from the protection given to him by the Civil Service Law, leaving him subject to the will or caprice of the Chief of the Department who could remove him from his new position without filing charges.

In *Rosario v. Cuevas, Commissioner, supra,* we decided that a mere change in the name is not in itself sufficient, to create a new position and to abolish the one that previously existed; and that when a position is abolished and a new one is immediately created, which involves the same duties as the prior one, the courts will protect the prejudiced employee, because they understand that the change has been made for the purpose of avoiding the Civil Service Law. See *State v. Seattle,* 83 Wash. 91, 145 P. 61, and other cases cited in *Rosario v. Cuevas, Commissioner,* 60 P.R.R. 457.

█ The second question to be considered and decided is the following: Is Act No. 41 of 1941 so inconsistent with the Civil Service Law that we are compelled to hold, as the lower court did, that the former suspended all the guarantees that the latter grants to the employees of the Department of Finance who, like the petitioner, had acquired the status of permanent employees within the Classified Civil Service?

We have already decided that the position that was held by the petitioner was not abolished by Act No. 41. In accordance with this, we have to decide that the Treasurer was not authorized to remove the petitioner from his position, unless we reach the conclusion that the purpose and intention of the Legislature was to place the employees of the Department of Finance outside the protection of the Civil Service Law, leaving them to be transferred, promoted, demoted or removed at the will and caprice of the Treasurer of Puerto Rico.

The Treasurer contends that the provisions of §1 of Act No. 41 of 1941 authorized him, despite the provisions of the Civil Service Law, to order the transfer of the petitioner from the permanent position that he held to another of temporary character, if the latter pays the same salary as the permanent position.

The statutory provisions cited by the Treasurer, in their pertinent part, read as follows:

"*Provided,* That with reference to the Legal Division, the members and personnel appointed by the Treasurer of Puerto Rico shall be appointed independently and with no limitation whatsoever which may arise from the Civil Service Law of Puerto Rico;

"      *       *       *       *       *       *       *

"*Provided,* That regarding the bureaus of General Accounting and Property Assessment, the positions provided in this Act shall be filled by appointment of the Treasurer with all the rights pertaining to permanent employees, until the Civil Service Commission makes the proper classification of said positions and prepares examinations in order that they may be filled; *Provided, further,* That all employees now holding positions in the Bureau of Accounts and Office of the Paymaster, in the Bureau of Municipal Finance, and in the Section of Assessments of the Bureau of Property Taxes, shall continue rendering services to the Department, at a compensation equal to or greater than the compensation they now receive by virtue of the present budget, the Treasurer of Puerto Rico being empowered to classify and to determine the positions to which they are to be assigned; *Provided, further,* That the newly created positions in connection with this Act shall be filled by appointment of the Treasurer of Puerto Rico with all the rights pertaining to permanent employees, until the Civil Service Commission makes the proper classification of said positions and prepares examinations in order that they may be filled; *And provided, further* That all employees now holding positions in the Department of Finance shall continue rendering services to the Department at a compensation equal to or greater than the compensation they now receive by virtue of the present budget, the Treasurer being empowered to classify and determine the positions to which they are to be assigned."

The above provisions clearly reveal the legislative intention to maintain in all its strength and vigor the spirit of justice which inspires the Civil Service Law and the guarantees that it offers those who serve the community with integrity and ability.

The statute makes a clear and specific exception with regard to the personnel of the Legal Division when it provides that it shall be independently appointed. The legislator just as clearly manifests his intention that the personnel of said Division shall not be included within the Civil Service.

The two provisos that refer to the Bureaus of General Accounting and Property Assessment and to the positions newly created are a ratification of the law and of the practice followed to fill newly created positions. The Treasurer makes the appointment and the appointed person holds the position with permanent character until the Civil Service Commission classifies the position and prepares the examination to be passed to warrant permanent appointment.

It is upon the last proviso that the Treasurer predicates his contention that he is empowered to transfer the petitioner to any other position within the Department of Finance, subject only to the limitation that the new position shall have equal or greater compensation than the petitioner received as Clerk and Accountant in the Attachment, Collection, and Claim Division.

The evidence discloses that the position held by the petitioner, and which he now claims, is not one of new creation. The petitioner has held it under different names and compensation, but always with the same duties, from 1935 to the date of his allegedly illegal removal on April 30, 1942.

Again we say that the Legislature is empowered to abolish any position in the public service and that it is equally empowered to repeal the Civil Service Law. In the instant case the position in question has not been abolished. And

the Civil Service Law, the fundamental purpose of which is to insure permanency, in the public service for those officers who are faithful and efficient, without exposing them to the uncertainties of political fortune, continues in full strength and vigor.

The court below arrived at the erroneous conclusion that the last proviso, *supra* impliedly repeals or suspends the Civil Service Law. The error consists in its having believed that because the Treasurer is empowered to classify and to determine the positions to which the employees in the Department of Finance will be assigned provided that they are assigned to a position of equal salary to the one they previously held, this power impliedly carries with it the suspension of the guarantees and the protection given to the employees who have acquired a permanent status within the Classified Civil Service under the Civil Service Law.

The Legislature can abolish a determined position or can exclude it from the Civil Service. But while that position exists and is held by a person with a permanent status, that person can not be deprived of the rights acquired by him under the Civil Service Law. We can not find anything in said proviso that leads us to assume that it was the intention of the Legislature to authorize the Treasurer of Puerto Rico to do what it could not do itself directly.

Undoubtedly, and we so decide, the Treasurer is empowered to transfer any employee in the Department from the position that he holds within the Classified Civil Service to another position of equal rank and salary, provided however, that his permanent status which he acquired when he passed the examinations is recognized in his new position.

Implied amendments to the law are not favored especially if, when they are applied, they would prejudice rights acquired under previous legislation which is still effective. The position held by the petitioner has not been either abolished or excluded from the Civil Service. If we

should hold that the Treasurer could transfer the petitioner to another position without permanent status, the Civil Service Law would be rendered ineffective.

The judgment appealed from should be reversed and another should be entered in accordance with the prayer in the petition.

Mr. Justice De Jesús disqualified himself and did not participate herein.