[No. 17275. Department One. September 11, 1922.]

THE STATE OF WASHINGTON, *on the Relation of Glen Dunbar, Respondent,* v. THE CITY OF SEATTLE *et al., Appellants.*[1]

MUNICIPAL CORPORATIONS (88)—OFFICERS AND AGENTS—REMOVAL —CIVIL SERVICE RULES—ABOLITION OF OFFICE. A city may abolish an office in the classified civil service of the city, and an incumbent cannot complain that he has been legislated out of office, where it appears that the duties of his office of "general electric foreman" were not given wholly to some other person, but were distributed to several other employees, in the interest of economy, in an ordinance abolishing sixteen existing positions in the department.

Appeal from a judgment of the superior court for King county, Honorable John S. Jurey, judge *pro tempore,* entered April 7, 1922, upon findings in favor of the relator, reinstating a discharged civil service employee, tried to the court. Reversed.

*Walter F. Meier* and *Charles T. Donworth,* for appellants.

*William E. Froude,* for respondent.

[1]Reported in 208 Pac. 1092.

PARKER, C. J.—This mandamus proceeding was commenced by the relator, Dunbar, in the superior court for King county, seeking his reinstatement as a civil service employee of the city of Seattle; he claiming to be entitled under the civil service provisions of the city charter to perform the duties and receive the compensation of "trolley foreman" in the department of public utilities. A trial upon the merits in the superior court resulted in a judgment in favor of the relator as prayed for, from which the city has appealed to this court.

In April, 1919, relator, having duly qualified as a civil service employee of the city, was employed by the city as "general electric foreman." This position, according to his own testimony, "had to do with the duties of the trolley department, wires and feeders, poles and other matters pertaining to the operation of the cars by the city." He continued in that position until March 22, 1920, when he was discharged because, as claimed by his superiors, the position of "general electric foreman" was abolished by ordinance passed by the city council on that day. For many years prior to April, 1919, when the Puget Sound Traction, Light & Power Company transferred its street railway system to the city of Seattle, W. S. Gordon was in the employ of that company as "general foreman of trolleys," his work being the maintenance of the trolley lines within the city. Thereafter, having duly qualified as a civil service employee of the city, he was employed by the city as "assistant electric foreman," his duties being the same as he had theretofore performed for the Puget Sound Traction, Light & Power Company as "general foreman of trolleys;" but under the relator, who was his superior with more extended duties and powers. There was introduced in evidence,

in behalf of the relator, a copy of what purported to be a statement of the duties of the various positions in the public utilities department prior to the discharge of the relator and the passage of the ordinance abolishing his position, as follows:

"General Electric Foreman:

"Under the direction of the Assistant Chief Engineer, to direct, check and supervise the work of the Assistant Electric Foreman, Telephone Engineer, Trolley Construction Foreman and Maintenance Foreman, consisting of the maintenance of all trolley and feeder wires, inspection and replacing of poles.

"Assistant Electric Foreman:

"Acts as assistant to the General Electric Foreman and under his direction."

There is other evidence in the record touching the duties incident to the position of general electric foreman prior to the relator's discharge, rendering it plain, we think, that the duties of that position were then much more than mere superintendence or maintenance of the trolley lines. On March 22, 1920, there was passed and became effective ordinance No. 40,697 of the city, entitled:

"An ordinance relating to the Department of Public Utilities, regulating the operation and maintenance of the municipal street railway, creating, and fixing the duties of, and compensation attached to, positions of employment in said department, abolishing certain other positions of employment, repealing all ordinances, or parts thereof, in conflict therewith, and declaring an emergency."

That ordinance, after enumerating the positions created thereby and specifying the compensation of the several incumbents, contained the following:

". . . all positions of employment heretofore existing in the Department of Public Utilities not ex-

pressly named or created in this ordinance be, and the same are hereby abolished."

The ordinance had the effect of abolishing some sixteen existing positions in the department of public utilities. There is no position specified in the ordinance as "general electric foreman" or "assistant electric foreman." The only specified position which can be said to embrace any considerable portion of the duties theretofore performed by the "general electric foreman" or "assistant electric foreman" is that of "trolley foreman." The designation of "trolley foreman," we think, comes much nearer correctly designating the whole duties theretofore performed by Gordon than it does the whole duties theretofore performed by relator. It is true that the relator theretofore had supervision over Gordon, the "assistant electric foreman," but that relator had, as "general electric foreman," duties extending quite beyond and apart from the work and duties performed by Gordon as assistant electric foreman, we think is made plain by the evidence. The evidence also renders it plain that the duties of relator, as general electric foreman, before the passage of this ordinance and his discharge, were thereafter distributed to other employees in addition to those given to, or we might better say left with, the "trolley foreman," upon the abolishing of the position of "general electric foreman" and the discharge of the relator therefrom. Gordon was retained as "trolley foreman," the position specified in the ordinance, and as such performed the same duties he had theretofore performed as "assistant electric foreman." Relator now claims that he is entitled to the position of trolley foreman now occupied by Gordon.

Counsel for relator relies upon our decision in *State ex rel. Wettrick v. Seattle,* 115 Wash. 548, 197 Pac. 782,

holding, in harmony with our previous decisions, that a civil service employee cannot be legislated out of his position by a mere change in the name of the position; the argument being that the facts of this case show no change in the public utilities service of the city amounting to any more than a mere change in the name of the position of "general electric foreman" to that of "trolley foreman," in so far as we are here concerned with the duties of those positions. Such also seems to have been the theory upon which the trial judge rested his decision in favor of relator. Judge Main, speaking for the court in that case, said:

"It is well settled that it is within the power of the city council to abolish a position in the classified civil service and thus separate an incumbent from the service and discontinue the salary thereof. *State ex rel. Voris v. Seattle,* 74 Wash. 199, 133 Pac. 11; *State ex rel. Burris v. Seattle,* 82 Wash. 464, 144 Pac. 695; *State ex rel. LaGrave v. Seattle,* 109 Wash. 629, 187 Pac. 339.

"Under the rule stated, if the city council abolished the office of chief engineer and created a new one with new duties, the relator cannot complain. On the other hand, if what was done in effect was the change of name in the office only, and the duties of the office of chief engineer were substantially the same as those of superintendent of maintenance, the relator's position is well taken.

"The trial court specifically found, and the evidence sustains the finding, that the work and duties to be performed under the two positions were identical and that the name of the position only had been changed. The relator, therefore, has a right to prevail under the holdings in *Foster v. Hindley,* 72 Wash. 657, 131 Pac. 197, and *State ex rel. Gilmur v. Seattle,* 83 Wash. 91, 145 Pac. 61."

We cannot agree with counsel for the relator, or the trial judge, that this ordinance effected only a mere change in the name of the position of "general electric

foreman" to "trolley foreman." The duties of these two positions are far from being identical, as we read the evidence. Even the undisputed facts are all but conclusive against relator on this question. Indeed, we think there would be more room for arguing that the former position of "assistant electric foreman" and the present ordinance position of "trolley foreman" are the same position with a mere change of name; since Gordon's duties under the former, so far as can be seen from this record, are wholly the same as under the latter. As we read this ordinance in the light of the facts disclosed by the record touching the service rendered by employees of the department of public utilities before and since its passage, it seems to us it might well be characterized as an economy ordinance and was enacted solely to that end, without any thought of arbitrarily and without cause legislating any public utilities employee out of his position. It may have had that effect upon relator, but it did not abolish his position of "general electric foreman" and give the duties of that position wholly to some one other person who had no other duties to perform. It merely abolished that position and gave those duties to several employees. This, under the decisions above cited, the city authorities had the right to do without violating any of the civil service provisions of the city charter. This renders it unnecessary for us to notice other contentions made by counsel.

The judgment is reversed.

TOLMAN, FULLERTON, MITCHELL, and BRIDGES, JJ., concur.