[No. 17638.   Department Two.   May 10, 1923.]

ELLSWORTH STOREY, *Appellant,* v. THE CITY OF SEATTLE
*et al., Respondents.*[1]

MUNICIPAL CORPORATIONS (311, 316)—POLICE POWER—DELEGATION —HUMANE SOCIETY AS POUNDMASTER. It is not an unlawful delegation of police power to a humane society for a city ordinance to authorize the society to impound cats and dogs having no license, and to collect license taxes and retain 85% thereof as compensation; in view of Const., art. XI, § 11, authorizing cities to make police regulations not conflicting with general laws, and the city charter authorizing the impounding and licensing of animals.

CORPORATIONS (5)—MUNICIPAL CORPORATIONS (316)—ORGANIZATION —PURPOSES—PUBLIC OR PRIVATE CORPORATION—HUMANE SOCIETY AS POUNDMASTER. A county humane society, organized under Rem. Comp. Stat., §§ 3184-3200, is not a private corporation, and may be appointed as a city's official poundmaster compensated by a percentage of the license fees collected; in view of § 3185 providing for the designation of its officers and agents as peace officers, impowered to arrest without warrant in cases of cruelty to animals, and Id., § 3198, providing that fines for cruelty to animals shall be paid to it.

MUNICIPAL CORPORATIONS (311, 316)—POLICE POWER—DELEGATION OF JUDICIAL AND LEGISLATIVE POWER—KEEPING ANIMALS—HUMANE SOCIETY AS POUNDMASTER. It is not an unlawful delegation of judicial or legislative power for a city ordinance, appointing a county humane society its official poundmaster, to authorize it to collect license taxes on cats and dogs, as that is but a ministerial act; or to grant permission to make an additional charge, not exceeding 35 cents a day, for cats and dogs held after the time fixed for redemption, which could thus be extended to save destruction of the animals; since that is not a fee or the imposition of a fine, but compensation for keep and a privilege to owners.

[1]Reported in 215 Pac. 514.

SAME (65)—OFFICERS AND AGENTS—REMOVAL—RESTRICTIONS OF CIVIL SERVICE RULES. An ordinance appointing a county humane society as a city's official poundmaster for cats and dogs does not violate the provision of the civil service; since the city has power to abolish a position in the classified civil service and vest the duties in another agency.

MUNICIPAL CORPORATIONS (311, 316)—POLICE POWER—CONCURRENT AND CONFLICTING PROVISIONS—KEEPING ANIMALS—DISPOSITION OF LICENSE FEES. An ordinance appointing a county humane society as a city's official poundmaster for cats and dogs, and authorizing it to retain 85% of the license fees as its compensation, does not violate Rem. Comp. Stat., § 9581, which provides that "not more than one half of all taxes and licenses on dogs" shall be paid into such fund; nor does it violate Seattle City Charter, Art. 14, § 1, subd. 2, or Art. 13, § 1, subd. 2, which provide that 10% of the gross receipts of all fines and licenses shall be paid to the library department and to the park department.

Appeal from a judgment of the superior court for King county, Tallman, J., entered June 19, 1922, upon overruling a demurrer to the answer, dismissing an action to restrain the enforcement of a city ordinance. Affirmed.

*Totten & Totten* and *Wm. Phelps Totten,* for appellant.

*Walter F. Meier, Ray Dumett,* and *George S. Kahin,* for respondents.

FULLERTON, J.—The plaintiff, as a taxpayer, brought this action to enjoin the enforcement of an ordinance of the city of Seattle relating to the impounding of dogs and cats. The ordinance attacked contains, among other provisions, the following:

"That the King County Humane Society, a corporation existing under and by virtue of Section 3266 to Section 3289 of Rem. & Bal. Annotated Codes and Statutes of the State of Washington, be and it is hereby appointed as and declared to be the official poundmaster of the city of Seattle, and is hereby employed for the purpose of carrying out and enforcing the

provisions of this ordinance; and all dogs, female dogs, cats and female cats found running at large without having on a license tag are hereby declared to be a public nuisance and it shall be the duty of said King County Humane Society to restrain and impound all such animals.

"Unless an impounded animal is suffering from serious injury or disease, the owner or keeper may redeem the animal within forty-eight hours by paying to said King County Humane Society the prescribed license tax, together with a penalty of One Dollar. If, however, an animal is held for more than forty-eight hours, an additional charge shall be paid, not exceeding thirty-five cents for each day the animal has been held after said forty-eight hours. And the said owner or keeper upon presentation to the City Comptroller of a receipt from the King County Humane Society for said charges shall receive a license tag as provided in the ordinance. All sums collected by said Humane Society, under the provisions herein, shall be paid to the City Treasurer as hereinafter provided.

"Any animal impounded for the want of a license tag and which is not redeemed within the specified time shall be humanely destroyed or at the discretion of the King County Humane Society may be held for a longer period and any person desiring to obtain said animal may do so upon payment of the license tax and charges, not exceeding those provided in Section 6 hereof.

"The King County Humane Society shall keep a record of all animals impounded and of their disposition with description and dates and if the animal is redeemed, of the charges imposed. Said Humane Society shall on or before the 1st and 15th day of each calendar month pay into the city treasury all moneys received pursuant to the provisions hereof. The King County Humane Society shall receive as and for consideration in payment for its services in enforcing and carrying out the provisions of this ordinance, an amount equivalent to 85% of all moneys received by the City Treasurer from any source whatever, for license fees, impounding fees, penalties and charges for dogs, cats and other animals, as herein provided for

and the city comptroller is hereby authorized and directed to draw and the city treasurer to pay on or before the 10th day of each calendar month a warrant drawn on the general fund, payable to the order of the said King County Humane Society, for an amount equivalent to 85% of the total of all money received by the City Treasurer during the preceding calendar month, from any source whatever, for license fees, impounding fees, penalties and charges for dogs, cats and other animals as provided herein.    The King County Humane Society shall, upon the taking effect of this ordinance, be permitted to use, free of charge, for a period of two years or until the said Society shall earlier secure new buildings and equipment of every kind now used in the operation of the city pound, including all lands, buildings and appurtenances thereto, all automobiles, all cages, platforms, chains, ropes, collars, electrocuting and asphyxiating equipment.    The said Society shall at the end of two years from the taking effect of this ordinance or earlier as herein provided, return to the city said land, buildings and equipment in the condition existing when said Society takes over their use, except for normal wear, tear and depreciation.

''It shall be the duty of the King County Humane Society, a corporation, to collect and dispose of all dead dogs and cats found in the city of Seattle.''

These provisions of the ordinance are questioned upon the ground of their constitutionality; the first contention in that behalf being that they unlawfully delegate a portion of the police powers of the city to the humane society named.    Article XI, § 11, of the state constitution permits cities to make and enforce, within its limits, local police, sanitary and other regulations not in conflict with the general laws of the state, and, in pursuance of this power, the people of the city of Seattle, in framing its present charter, granted to the city council authority:

"To restrain or prevent domestic or other animals from running at large; and to license, tax, regulate and restrain the keeping of dogs within the city limits, and to authorize the destraining, impounding and sale of said domestic and other animals for the penalty incurred and costs of proceeding, and to authorize the destruction of dogs impounded for want of license." Seattle Charter, art. IV, § 18, subsection 38.

The appellant, while apparently recognizing that the city itself, through proper agencies, may exercise the powers conferred by the charter and ordinance, urges that it cannot do so through the agency of the humane society because this is to delegate its "police powers to a private corporation, without restraint and without accounting by oath, bond or other obligation to the sovereign power." But we cannot agree with the appellant that the King County Humane Society is a private corporation. This society is organized under the provisions of §§ 3184 to 3200, of Rem. Comp. Stat. [P. C. §§ 1957, 1973]. Under the provisions of Rem. Comp. Stat., § 3185 [P. C. § 1958], thereof, its officers, members and agents, duly designated by the trustees of the society and approved by a judge of the superior court, are peace officers, and have the powers of peace officers in matters relating to the cruelty to animals. They are also empowered to make arrests without warrants in certain cases; to appear in court and prosecute cases in the name of the state; and by Rem. Comp. Stat., § 3197 [P. C. § 1970] it is provided that all fines collected in any county for the violation of the state laws relating to cruelty to animals shall be paid to such society. Nor can we agree that the ordinance delegates to the society any part of the police powers of the city. It seems to us that, instead of delegating such a part, the city is but making use of a public corporation, created by state law, to enforce its penal laws relating to the regulation of cats and dogs.

In support of his contention, the appellant cites *Fox v. Mohawk & Hudson River Humane Soc.*, 165 N. Y. 517, 59 N. E. 353, 51 L. R. A. 681. In that case, the New York court had before it a statute which provided that the humane society should have full charge of the licensing of dogs and the enforcement of the license law. The law was unconstitutional in that it permitted the society to retain the license fees for the purpose of carrying out the provisions of the act and "for its own use"; and for the further reason that it permitted the society to keep dogs without paying any fee. The statute was subsequently amended in these particulars, and as amended was upheld by the court in *People ex rel. Westbay v. Delaney*, 73 Misc. Rep. 5, 130 N. Y. Supp. 833, and by the supreme court of the United States in *Nicchia v. People of State of New York*, 254 U. S. 228, 13 A. L. R. 826. In the case of *Westbay v. Delaney, supra,* the court held that, by amending the law to make the destruction of unclaimed dogs mandatory, the constitutional objection had been removed. As to the retention of the license fees and the delegation of power, the court said:

"The license fees are expressly given not for its private purposes, but all fees not required for carrying out the provisions of the act are to be retained as compensation for enforcing the provisions of the Penal Code and other statutes. This compensation is not in inverse proportion to the services rendered, for these services extend to other matters in addition to the killing of unlicensed dogs. Many of these services had been previously performed by the municipality, and under the statute the society has proved an appropriate means of performing this work.

"While the legislature has not the right to vest in private associations authority and power affecting the life, liberty, and property of citizens, except in a few special instances, it has the undoubted right to employ private associations and individuals in a purely ad-

ministrative capacity, to compensate them for such services, and to appropriate funds in aid of such services. Under this statute, the complainant has no discretionary power to grant licenses; and it seems to me that such powers as have been confided to it are powers which could be constitutionally vested in a private corporation.''

The statute there in question does not differ materially from the present ordinance and is authority for the holding that it is but merely the vesting of ministerial and administrative duties. McQuillin on Municipal Corporations, vol. I, p. 852, states the governing rule as follows:

''The rule forbidding the delegation of power, stated and illustrated in prior sections, does not apply to the performance of purely ministerial duties. Such duties may be delegated. The law has always recognized and emphasized the distinction between instances in which a discretion must be exercised by the officer or department or governing body in which the discretion is vested, and the performance of merely ministerial duties by subordinates and agents. Therefore, the appointment of agents to carry out the authority of the council is entirely competent and does not violate the rule *delegatus non potest delegare.*''

The situation is not different in principle from the letting of an exclusive contract for the collection of garbage, which we have held to be within the powers of a city. *Smith v. Spokane,* 55 Wash. 219, 104 Pac. 249, 19 Ann. Cas. 1220; *Cornelius v. Seattle,* 123 Wash. 550, 213 Pac. 17.

It is next contended that the ordinance vests judicial and legislative power in the humane society, in that it permits the society to impose fines; to keep dogs, and to determine the ''additional charge'' to be collected when impounded dogs are redeemed. The penalty, however, is prescribed by the ordinance itself, hence

its collection is not a judicial but a ministerial act. Neither does the ordinance permit the society to keep dogs without licenses, except as the agent of the city. The permission granted it to fix an additional charge not to exceed thirty-five cents a day for cats or dogs held for more than forty-eight hours is a reasonable regulation and is not a delegation of legislative power. The society is compelled to hold animals under the terms of the ordinance for forty-eight hours, except those suffering from serious injury or disease, in order to give the owner the opportunity to redeem. At the end of that period, the society may destroy the animal. To permit the owner further opportunity of redeeming, or where other circumstances are present, the society is given the option of extending the time of redemption, and the fee allowed to be charged is not a license fee, but rather a charge in the nature of compensation for the feeding and caring for the animal. This differentiates the case from the case of *State v. Scott,* 115 Wash. 124, 196 Pac. 576, where we held that a city council could not delegate to a ministerial officer the right to fix the amount of a license fee.

It is next contended that the ordinance is in contravention of the city charter and void because it conflicts with its provisions relating to the civil service, and especially with the requirement that no appointments to any office shall be made except under and according to the civil service rules. However, it is well settled that the city council has the power to abolish a position in the classified civil service and vest the duties imposed on the holder of the position in another agency. *State ex rel. Voris v. Seattle,* 74 Wash. 199, 133 Pac. 11, 4 A. L. R. 198; *State ex rel. Burris v. Seattle,* 82 Wash. 464, 144 Pac. 695; *State ex rel. LaGrave v. Seattle,* 109 Wash. 629, 187 Pac. 339.

It is finally contended that the ordinance contains a grant of aid to a private corporation. Much that has been argued under this head has been answered by what we have said above. The payment of eighty-five per cent of the fees to the society is in line with state legislation above referred to. The same objection was raised against the New York law, and in *Nicchia v. People of State of New York, supra,* the supreme court of the United States said:

"The American Society for the Prevention of Cruelty to Animals was incorporated by c. 469, Laws of New York, 1866. 'The purpose of the corporation, was to enforce the laws enacted to prevent cruelty to animals.' . . . It has long been recognized by the legislature as a valuable and efficient aid toward the enforcement of those laws. New York Penal Laws, Art XVI, § 196. The payment of public funds to a similar corporation for assistance in enforcing penal statutes has been declared unobjectionable. *People ex rel. State Board of Charities v. New York Society for the Prevention of Cruelty to Children,* 161 N. Y. 232, 239, 250.

"And when the state in the reasonable conduct of its own affairs chooses to entrust the work incident to such licenses and collection of fees to a corporation created by it for the express purpose of aiding in law enforcement, and in good faith appropriates the funds so collected for payment of expenses fairly incurred and just compensation for the valuable services rendered, there is no infringement of any right guaranteed to the individual by the Federal Constitution. Such action does not amount to the taking of one man's property and giving it to another, nor does it deprive dog owners of liberty without due process of law."

But it is said that the payment of eighty-five per cent of all the fees received violates the state law which provides for the payment into the police pension fund of fifty per cent of these revenues, and sections of the city charter which provide that ten per cent of these

fees shall go to the park department and ten per cent to the library department. But we find no conflict with the state law referred to. The statute does not fix a definite amount mentioned from dog licenses to be paid into the fund. The language is that "Not more than one-half of all moneys received from taxes or from licenses upon dogs" shall be paid into the police fund. [Rem. Comp. Stat., § 9581.]

Neither does it conflict with subd. 2, § 1, art. XIV, of the charter, providing that the library department shall receive "Ten per cent of the gross receipts of the city from all fines, penalties and licenses."

Neither can subd. 2 of § 1, of art. XIII of the charter, containing the same language relating to the park department, be said to be a previous and superior appropriation of these moneys, unless it be shown that the eighty-five per cent of the dog and cat license fees is more than eighty per cent of the total revenues of the city from fines, penalties and licenses, something that is not pleaded and something, obviously, that is not the fact.

We are convinced that the ordinance in question conflicts with none of the provisions of the constitution, the state law, or the city charter, and the judgment will stand affirmed.

MAIN, C. J., PARKER, TOLMAN, and PEMBERTON, JJ., concur.