[No. 24442. Department Two. November 10, 1933.]

WILLIAM L. HILL, *Respondent,* v. THE CITY OF TACOMA, *Appellant.*[1]

[1]Reported in 26 P. (2d) 1030.

*W. W. Mount, John E. Gallagher,* and *Bartlett Rummel,* for appellant.

*John M. Coffee,* for respondent.

BLAKE, J.—Plaintiff brought this action, praying for a writ of mandamus to compel defendant to restore him to the position of carpenter, and for compensation accruing to the position during the period he was wrongfully separated from it. The court below entered judgment ordering the writ to issue and for $931.29, the amount accruing to the position during the time plaintiff was denied its enjoyment. Defendant appeals.

Respondent entered the service of the appellant, as a carpenter, under civil service in 1911. Apparently, he was the first to attain civil service standing in such position, for he has at all times held rank as "No. 1." From the record, we gather that, for many years, he was the only one steadily employed in that capacity. He worked for the various departments as their needs called him.

In 1927, the people of Tacoma adopted a new charter, which, among other things, provided for the retention of civil service employes in the same position and rank as they held under the old charter. For some five years prior to that time, respondent had been working in the carpenter shop, which was then under the supervision of the department of public works. Under the 1927 charter, a department of contracts and awards was created, which acquired jurisdiction over the carpenter shop and the persons there employed. The carpenter shop and the men there employed continued to do exactly the same work in exactly the same man-

ner as when the shop and they were under the supervision of the department of public works. In other words, whenever there was any carpenter work to be done for any department in the city, it was done by men from the carpenter shop, whether it was inside or outside work. The employees were working for the city at large, and not for any particular department. As we understand the record, their supervision by the department of contracts and awards was primarily for administrative reasons and accountancy purposes.

In 1926, one Ligman entered the service of the city, under civil service, as a carpenter. He held the rank of "No. 2." He and respondent did exactly the same kind and character of work.

On April 1, 1932, Ligman's services were discontinued because of a lack of work. On April 4th he went to work as a carpenter in the department of public works. It is not clear from the record just how he was inducted into this position. In any event, he continued to do the same kind and character of work that he did when he was working under the supervision of the department of contracts and awards.

On April 15th, the respondent was advised by the superintendent under whom he was working that the carpenter shop was going to be closed because of lack of work. He was required to turn in his keys to the shop, and has since been denied the privilege of doing any carpenter work for the city. Ligman, on the other hand, has kept his keys to the shop and has been accorded the privilege of doing all of the carpenter work for the various departments of the city.

■ It seems too plain for argument that respondent has been denied his rights under the civil service provisions of the city charter and the rules and regulations made pursuant thereto. The city seeks to justify its course of action under rules 56 and 57, promulgated

by the civil service commission. So far as pertinent to the city's contention, these rules provide:

"Lay off shall be made in accordance with the following provisions:

"The employee first laid off shall be the one who was last certified to the grade and group in the department, board or office in which the reduction is made.

"When reduction in grade is entailed by either lack of work or funds or by the operation of any Civil Service rule, the first employee reduced shall be the one last certified to the department, board or office. . . .

"The Commission shall keep a register of the persons laid off under the provisions of this rule to be known as 'the lay off register.' . . .

"Persons whose names are carried on the lay off register shall be re-employed in the following order:

"The person laid off last shall be re-employed first."

The argument is that this rule was complied with by laying off Ligman first and respondent second; that respondent will be entitled to go back to work ahead of Ligman in the department of contracts and awards, but that, under the rule, he cannot displace Ligman in the position he holds in the department of public works. To sustain this contention, would be to sacrifice substance to form. The argument fails to take into account the facts, already noted, that both Ligman and respondent were working for all departments of the city, and that they were not classified as carpenters for any particular department.

It is not necessary for us to determine what the effect of these rules would be if a senior in the civil service, who had been exclusively employed in one department, should attempt to dislodge a junior, in the same classification, from his position in another department. We simply hold that these rules are not pertinent to the facts disclosed by this record.

We think it hardly necessary to discuss respondent's right to compensation. The rule is well

established that a civil service employee is entitled to the compensation accruing to his position during the period he is wrongfully separated from it. *State ex rel. Allen v. Spokane,* 150 Wash. 542, 273 Pac. 748, 277 Pac. 999; *State ex rel. Buchanan v. Seattle,* 171 Wash. 113, 18 P. (2d) 3. Respondent made formal demand to be restored to his position on June 10, 1932. The court rightly found that the wrongful separation began at that time.

It is suggested that respondent was guilty of laches in claiming the position. This contention is without merit. Respondent called the situation to the attention of the civil service commission early in May. Either by members of the commission or by his superiors in the city's service, he was persuaded not to press his claim at that time.

The judgment is affirmed.

BEALS, C. J., TOLMAN, HOLCOMB, and GERAGHTY, JJ., concur.