[No. 25791. Department Two. January 6, 1936.]

THE STATE OF WASHINGTON, *on the Relation of L. A. Thompson, Appellant,* v. THE CITY OF SEATTLE *et al., Respondents.*[1]

[1]Reported in 53 P. (2d) 320.

*Caldwell & Lycette,* for appellant.

*A. C. Van Soelen* and *Glen E. Wilson,* for respondents.

HOLCOMB, J.—This action in mandamus was instituted praying for reinstatement by relator, and payment of back salary at $9.85 per day from January 31, 1934, as a civil service employee of the board of park commissioners of Seattle. The case was tried to the court without a jury, and although the evidence was undisputed, respondents introducing no testimony except that which was introduced by relator, we do not entirely agree with the findings made by the trial court.

Under Article XIII, § 2, of the Seattle city charter, as found by the trial court, and as a matter of law (*Seattle ex rel. Dunbar v. Dutton,* 147 Wash. 224, 265 Pac. 729), the management and control of all of the public squares and parks and of all park drives, parkways, boulevards, play or recreation grounds of Seattle, is vested exclusively in the board of park commissioners.

Sections 7 and 8 of the same article, so far as material to this case, read:

"Sec. 7. The board of park commissioners shall, subject to civil service regulations, have exclusive power to employ and pay all such superintendents, employees and other persons as it may deem necessary for maintaining, improving and controlling all park property, . . ."

"Sec. 8. The board of park commissioners shall alone have authority to expend the park fund, . . ."

In the annual budget of the department of parks for the period in controversy, the only authorized item for the services of plumbers reads:

"Salaries:

. . . . . . . . . . . .

General System
Plasterers, plumbers, bricklayers,
    painters ...........................$1,500.00"

The entire amount of that budget item was used during 1934 for a painter, who was regularly qualified and appointed under civil service rules and regulations.

Prior to the time appellant was employed on November 10, 1932, there had been no position of plumber in the park department, all plumbing installation work and major plumbing repair work for the department having been done under contract let in the manner provided by the charter. Minor repair and maintenance work on the plumbing was done either by the incumbent of the position of "Houseman" or by the custodian or keeper in charge of the particular park or playground involved, as was found by the trial court. According to the undisputed testimony, that system had been employed by the department for twenty-two years. The minor repairs referred to consist of turning on the water in the spring and off in the fall, making minor repairs to drinking fountains and faucets, and correcting minor stoppages.

The position of "Houseman" above referred to has existed for many years; his duties being under the direction of the superintendent of parks, or the foreman of park maintenance, which consists of such repair work as maintenance of electrical lighting systems, plumbing, carpentry and general mechanical work, or such other work as may be directed by superior officers. That position, as found by the court, has at all times involved in this case been and now is filled by an employee under civil service rules and regulations. Appellant is not and has never been a

qualified eligible under civil service rules and regulations for the position of "Houseman."

In November, 1932, the park department undertook to install an irrigation and sprinkling system at Green Lake, the cost of which was paid out of certain bonding funds, utilizing their own men for this work. All other plumbing construction and installation work had been done either with labor furnished by the civil works administration or by contract. On the Green Lake work a plumber was required, and upon certification by the civil service commission of three eligible persons of whom appellant was first, he was, on November 10, 1932, employed for such work.

The record conclusively shows that the request for certification, signed by the then president of the park board and conforming to the city civil service ordinances and rules, stated that, if the employment was to be temporary, its probable duration should be given. The request therefor stated: "Temporary. Will be needed about one month." This request was the only one ever made by the park board for a plumber. The record also shows that, from and after November 10, 1932, appellant obtained actual employment for a total of nine months and two days, for which he was paid at the rate prescribed by city ordinance of $9.85 per day.

On February 16, 1934, the Seattle civil service commission was given notice that, on January 31, 1934, appellant had been laid off. On April 12, 1934, appellant requested that the civil service commission give him "permanent standing in the park department as plumber." He was advised that he was on the reinstatement register for that employment if certification of a plumber was requested. On June 22, 1934, he demanded that he be "reinstated," claiming the right to do all the plumbing work in the park department,

including that done by the "Houseman" and the minor routine repair work heretofore referred to as being done by the attendants. His demand was refused.

Appellant chiefly relies on that provision of Article XIII of the city charter relating to the park department at the commencement of section seven of that article to the effect that, "subject to civil service regulations," the park board shall have exclusive power to employ and pay all such superintendents, employees and other persons as it may deem necessary.

It is then asserted that appellant, being a qualified civil service employee, is entitled to the compensation accruing to his position during the period that he was wrongfully separated from it and to an order directing his reinstatement. To that effect are cited the following of our cases: *Gilmur v. Seattle,* 69 Wash. 289, 124 Pac. 919; *Foster v. Hindley,* 72 Wash. 657, 131 Pac. 197; *State ex rel. Cole v. Coates,* 74 Wash. 35, 132 Pac. 727; *State ex rel. Gilmur v. Seattle,* 83 Wash. 91, 145 Pac. 61; *Petley v. Tacoma,* 127 Wash. 459, 221 Pac. 579; *State ex rel. Weyant v. Seattle,* 127 Wash. 681, 221 Pac. 997; *State ex rel. Buchanan v. Seattle,* 171 Wash. 113, 18 P. (2d) 3; *Hill v. Tacoma,* 175 Wash. 98, 26 P. (2d) 1030.

None of the cases above cited are in any way applicable to the present case. Under § 7, Article XIII, *supra,* the park board and the civil service commission complied with civil service regulations in requesting and certifying appellant for "temporary" employment. The park board evidently does not need a permanent plumber and does not employ one, but under that section did have the exclusive power to employ and pay such employees and other persons, "as it may deem necessary." Under § 8, the park board alone

has power and authority to expend the park funds. No court can compel the park board to employ a plumber permanently if it does not need one. Since appellant has not been permanently employed by the park board, he was not entitled to be permanently retained, under civil service rules. Under the *Gilmur* cases, *supra,* the *Foster* case, and other cases following them, such as *State ex rel. Wettrick v. Seattle,* 115 Wash. 548, 197 Pac. 782, there was manifest bad faith, subterfuge and evasion practiced by municipal authorities to get rid of men who were more or less permanent officers or employees; and they were undoubtedly wrongfully separated from their offices or positions, which were protected by civil service regulations, in all of which cases they were entitled to be reinstated with pay from the time of their suspensions, or dismissals.

In another case, strongly relied upon by appellant, *State ex rel. Cole v. Coates, supra,* under a provision of the Spokane city charter where a cross-walk foreman held a position which had the attribute of permanency, we held he could not be removed without cause. In that case we said:

"A day laborer is one whose engagement to labor is but a day long (13 Cyc. 264), while this position had the attribute of permanency."

All of the later cases by this court cited by appellant involve similar issues and are not controlling here.

In the instant case, there was no evasion or subterfuge practiced toward appellant. He does not have the standing of a permanent employee or appointee. He does have the status, to which he is entitled, of being the first eligible to employment for such work as the board of park commissioners may have and has been so informed.

Subject, of course, to all valid laws and ordinances, the power of the board of park commissioners, with reference to the management and control of the parks of Seattle, is supreme. *Seattle ex rel. Dunbar v. Dutton, supra.*

In *State ex rel. Voris v. Seattle,* 74 Wash. 199, 133 Pac. 11, a case much more favorable to a civil service employee whose position had been abolished by ordinance and his duties combined with those of another, this court said:

"The council has the right to create offices and it may abolish them, or it may, in the interest of economy and efficiency, combine the work of several employees so that their duties will be thereafter performed by a lesser number of men. . . . An employee cannot be removed to make way for one who is in the same legal position. In other words, the work formerly done by Voris being combined with that formerly done by Farren, neither the civil service commission nor the courts have power to say that a present employee shall give way to one who insists upon the right to perform a part only of the present duties of the existing position. . . . This ordinance is fair upon its face. It suggests nothing unless it be a purpose to work economy. If the rule were otherwise, it would be impossible for the governing body of a city to change, rearrange, or redefine the duties of its employees, so long as any one of them had been classified by the civil service commission and had a scintilla of work to perform."

Those expressions apply with full force to the case at bar.

In *State ex rel. Burris v. Seattle,* 82 Wash. 464, 144 Pac. 695, we said:

"Without noticing the appellant's contentions in detail, we think there can be no question as to the legality of the superintendent's action. An ordinance fixing a salary, and providing it shall be filled under civil service rules, does not create a contract between

the municipality and the person selected to fill it, nor does it give to the occupant after he is selected a life tenure. The office may be abolished in the interests of economy, when the necessity therefor no longer exists and the occupant thereby removed has no legal cause of complaint because thereof."

That pronouncement applies with full force here.

In *Kessler v. Seattle,* 93 Wash. 192, 160 Pac. 423, we also said:

"The power of the city council to reduce the number of city employees in the interest of economy cannot be successfully questioned. Where such a reduction is made requiring a dismissal or suspension of some employee, it is not a matter of injustice, requiring correction by the courts, for the appointing power in making a selection among those equally efficient to retain those longest in service."

In *State ex rel. LaGrave v. Seattle,* 109 Wash. 629, 187 Pac. 339, we quoted with approval from the *Kessler* case, *supra,* and also cited other cases by this court, including the *Voris* and *Burris* cases, *supra.*

Those principles have not been disregarded in any of our later cases cited by appellant. If the city council had such power as stated in the foregoing cases, the park board certainly has it under what is called its "supreme power" respecting the parks in *Seattle ex rel. Dunbar v. Dutton, supra.*

Consequently, although some of the findings made by the trial court were erroneous, the result reached was right.

The judgment is affirmed.

MAIN, BEALS, and BLAKE, JJ., concur.

MILLARD, C. J. (dissenting)—I dissent.

Appellant was appointed, after an examination therefor, to the classified civil service position of plumber in the park department. At all times subse-

quent to the appointment, there has been sufficient plumbing work to be done in the park department to keep at least one plumber employed full time. Being the only eligible to employment for such work, the board of park commissioners should have employed appellant, and not others who are not plumbers, to perform that work.