[No. 27750.  Department One.  February 27, 1940.]

OTTAR B. HAGA *et al., Appellants,* v. THE CITY OF
SEATTLE, *Respondent.*[1]

¹Reported in 99 P. (2d) 623.

*Wright & Wright* (*Ambrose C. Grady,* of counsel), for appellants.

*A. C. Van Soelen* and *Glen E. Wilson,* for respondent.

SIMPSON, J.—Plaintiffs brought this action to recover compensation accruing to their civil service positions during the intervals when they were separated from those positions.

There were six causes of action set out in the complaint. Haga appeared as plaintiff in the first and second causes of action, King in the third, Delmar in the fourth, Langum in the fifth, and Simmonds in the sixth cause of action. All plaintiffs were duly certified and classified civil service workers of the city of Seattle. Haga and Simmonds were carpenters, and the other plaintiffs were painters.

In the first cause of action, plaintiff Haga alleged that, February 2, 1938, he was laid off or suspended on the pretense that there was a lack of work as a carpenter in any of the departments of the city of Seattle; that his suspension lasted for a period of forty-five days, during which time carpenter work was being done for the defendant city by a laborer and by carpenters inferior in line of appointment. In each of the other causes of action, plaintiffs alleged their positions as certified and classified civil service workers, and that the defendant city of Seattle had laid them off or suspended them on the pretext or pretense that there was lack of work in the departments of the city; and that the work they were entitled to do under their civil service classifications was done by workmen who had no civil service standing whatever.

In its answer, the defendant, city of Seattle, denied

the allegations of the plaintiffs concerning their right to work as civil service employees during the periods of time they were suspended from work.

The case was tried to the court, sitting without a jury. The court made findings of fact and conclusions of law favorable to the city and entered a judgment dismissing the action. Plaintiffs have appealed. The errors which plaintiffs press upon us will be noted as we proceed.

Appellant Haga's first contention, that he should be allowed recovery at the rate of ten dollars per day for the forty-five days between February 2, 1938, and May 9, 1938, during which he was not employed, is supported by the allegation that other men performed carpenter work which should have been allotted to him because of his superior civil service rating. In this connection, evidence was introduced relative to the activities during the period in question of one Herbert M. Ridley, a civil service utility laborer, of other laborers, and of two civil service carpenters, John A. Fureby and Martin A. Nyland.

Ridley, it is argued, was wrongfully employed in the performance, for the park department, of services of a character usually performed not by a "utility laborer," but by a "carpenter." In other words, respondent is charged with having Ridley perform duties not properly within his civil service classification. Likewise, it is contended by appellant Haga that other laborers in the employ of respondent, Oscar Thoreson and Charles Prader, were improperly engaged in doing carpenter work for respondent.

The objection relating to the employment by the park board of the carpenters, Fureby and Nyland, in the erection of a house at Golden Gardens, is not based upon an inconsistency between the civil service classi-

fications of these men and the work in which they were engaged, but rather upon the contention that appellant Haga had a superior civil service rating with the park department which entitled him to a preference over them when the employment of carpenters was undertaken.

With reference to the activities of Ridley, the trial court found:

"The Court finds that under the evidence Ridley's civil service classification and status at all times herein mentioned was that of Utility Laborer, in which classification he was entitled to perform the duties of a carpenter's helper. The Court further finds from the evidence that at no time during the forty-five day period herein referred to and mentioned was said Ridley performing such work as carpenter as to require him to be displaced and Haga substituted in his stead, nor was said Ridley performing any work that he was not entitled to perform under his civil service status as Utility Laborer."

The evidence adduced at the trial discloses that Ridley was made a utility laborer January 1, 1938, prior to the period embraced in the first cause of action, and evidence was introduced to the effect that, under this classification, he was entitled to act as a carpenter's helper. There was some testimony to the effect that he and the other laborers mentioned were engaged in carpenter work. On the other hand, there was no direct proof that the carpenter work in which Ridley was engaged exceeded the scope of activity made legitimate by his civil service classification as utility laborer. Further, the record fails to disclose reference to any specific days, or to any definite number of days, on which any of these laborers were employed in carpenter work during the period involved in appellant Haga's first cause of action.

Appellant Haga calls our attention to *Haga v. Seattle,*

195 Wash. 226, 80 P. (2d) 821, in which we held that he was wrongfully separated from his employment with the park department for two hundred fifty-five days between January 3, 1936, and May 18, 1937, and that his work was being done by Ridley, the same person mentioned in this case. Appellant contends that his status and that of Ridley was fixed in that case; and that, under the evidence adduced in the case at bar, the prior case is conclusive of Haga's present right to recover for the forty-five days during which he was idle between February 2, 1938, and May 9, 1938.

This argument must fail, for the obvious reason that appellant has failed to prove that Ridley was wrongfully engaged in carpenter work.

We conclude that appellant Haga's first cause of action cannot be sustained upon the activities of either Ridley or the other laborers to which the evidence refers.

■ Consideration of the bearing which the employment of the civil service carpenters, Fureby and Nyland, has upon Haga's first cause of action, requires a more detailed examination of the facts. It is undisputed that Haga was laid off from his prior temporary employment with the building department February 2, 1938; that he returned for temporary work February 25, 1938, and was again laid off March 25, 1938; that he filed written protest with the civil service commission February 25, 1938, alleging, *inter alia,* that laborers and civil service carpenters junior to him in point of service and without preference over him were doing work which he was entitled to do; that, pursuant to a hearing on these matters April 12, 1938, the civil service commission ordered Haga's name placed on the reinstatement register for the park department; that Haga returned for temporary work with the park de-

partment May 9, 1938; that he was idle for forty-five days between February 2, 1938, and May 9, 1938; and that his basic pay during this period was at the rate of ten dollars per day.

In contrast with the evidence relating to the work done by Ridley and the other laborers, the record is conclusive to the effect that both Fureby and Nyland were in the employ of respondent doing regular carpenter work in the park department during definite portions of the period in question. The civil service record of Nyland discloses that he returned for temporary work February 23, 1938, and that he was laid off April 28, 1938. That of Fureby indicates his return April 4, 1938, and that his employment continued until April 20, 1938. As the record of Nyland includes all of the period which is embraced in that of Fureby, the record of Nyland alone will be considered.

It is respondent's contention that appellant Haga has, through the completion of his probationary period in another department, lost his right to reinstatement in the park department. It may be noted, however, before considering this disputed question, that respondent concedes Haga to be entitled to preference rights in the park department over both Fureby and Nyland if it be found that Haga still retained, at the time in question, his right to reinstatement in that department.

We will consider, then, the question of whether or not appellant Haga was entitled to reinstatement rights in the park department. Again we must refer to additional facts. It is established by the record that appellant Haga was first employed by the light department May 11, 1936, and that he continued in the service there until laid off September 18, 1936. From the latter date, he remained unemployed until his return to the light department for the period between May 18, 1937, and

October 1, 1937. It will be seen that, when laid off September 18, 1936, appellant Haga had worked in the light department for approximately four and one-quarter months, and that, on October 1, 1937, his employment in that department totaled about eight and three-fourths months.

In his prior cause of action against the present respondent, appellant Haga sought and was awarded recovery for wrongful separation from his employment with the park department for a total of two hundred fifty-five days, during which he was not otherwise employed, between January 3, 1936, and May 18, 1937. *Haga v. Seattle, supra.* In the cited case, we had occasion to make the following reference to the fact that the first period of Haga's employment with the light department fell within the total period involved in that case:

"Defendant contends that plaintiff, by accepting a position in the light department in May, 1936, lost his right to compensation accruing to his position in the park department during the period of separation. This contention, we think, is answered by rule 6, promulgated by the civil service commission. The rule provides for a reinstatement register, in which the names of employees who have been laid off or reduced in rank shall be kept. It then provides:

" 'Such persons shall also be entitled to certification to other departments, on the basis of their examination average, from the eligible list from which they were originally appointed; *provided, that if appointed in another department their right to reinstatement in their former position shall cease at the expiration of the period of probation.*'

"Plaintiff was laid off in the light department September 18th. Clearly, under the rule, he did not lose his standing in the park department, since he did not serve out the probationary period in the light department."

The same civil service rule was in effect during the period involved in appellant Haga's first cause of action in the instant case. Respondent, relying upon the language of the above excerpt, concedes that Haga had not, so far as his prior action was concerned, completed his six months probationary period with the light department, but contends that, by subsequently serving the second period with the light department, he has conclusively brought himself within the scope of the proviso to the quoted rule. On this basis, respondent argues that the civil service commission acted wrongfully April 12, 1938, in ordering appellant Haga's name placed on the park department reinstatement register, and that he must fail in his first cause of action for the reason that the completion of his probationary period with the light department precludes him from asserting any preference in the park department over Nyland.

While this reasoning has some technical merit, it is not sufficient to support respondent's contention. Our holding in *Haga v. Seattle, supra,* necessarily implies that Haga was wrongfully separated from his position with the park department during the entire period covered by his cause of action in that case, viz., from January 3, 1936, to May 18, 1937. We have already indicated that the first term of his employment with the light department falls within that period. Assuming, but not deciding, that appellant Haga's service with the light department during the second period is not similarly tainted, it is plain to us that his first period of service with that department cannot be included in a computation of his total service there under the terms of the proviso to section 6. His acceptance of employment at that time was made necessary by conduct on the part of respondent which we have already condemned as wrongful. Respondent cannot now be allowed to shield itself from further liability by reliance

upon a situation for which its wrongdoing is directly responsible.

We hold that appellant Haga was entitled to preference in the park department over Nyland. He was, therefore, wrongfully separated from his position for so many of the forty-five days in question as Nyland was employed in his stead. This we compute to be twenty-six days. At the rate of ten dollars per day, the total loss to appellant Haga was $260.

It is not disputed that his demand for reinstatement was seasonable and sufficient. Appellant Haga is, therefore, entitled to recover in the above-named amount under his first cause of action.

It is next urged by appellants, under their five remaining causes of action, that, during the periods of time for which they claim compensation, the city separated them from their jobs by the employment of Works Progress Administration workers. The trial court's findings in that regard read as follows:

"The Court finds that since January 1, 1938, the defendant City of Seattle has sponsored numerous W. P. A. projects totaling in cost about $800,000, to which the defendant contributed in material and equipment over $100,000 of the cost. All of the labor, and in some instances material and equipment, was furnished by the Works Progress Administration, an agency of the Federal Government under its Emergency Unemployment Relief Program. The defendant City has nothing to do with the employment or compensation of the workmen upon said work, and the Court finds that they are not employees of the defendant City of Seattle but of the Works Progress Administration.

"The Court further finds from the evidence that most of the work was on the parks and playfields, the exceptions being the completion of a laboratory building at Firland Sanatorium and work on the Civic Auditorium and Ice Arena. That most of the work done was new work made necessary by the growth of the City, and the rest was repair work necessary to preserve the

property which had been delayed for many years because of lack of funds. That had it not been for the assistance of the Works Progress Administration the work could not have been done because of lack of funds. The Court finds that there was no bad faith, subterfuge or fraud shown either by the defendant City or by the Works Progress Administration in fulfilling their respective obligations."

The city of Seattle adopted the scheme of having its necessary maintenance and new work done by Works Progress Administration workers under a contract or agreement with the Federal government, whereby the city furnished the materials and the government the workers. The city had the right to change its method of work at any time. It could have had its work done by contract or agreement with governmental agencies. It could abandon the maintenance work entirely, if it saw fit so to do, and it could change the manner or method of accomplishing its purpose directly or indirectly.

In *State ex rel. Voris v. Seattle*, 74 Wash. 199, 133 Pac. 11, 4 A. L. R. 198, this court held:

"The council has the right to create offices and it may abolish them, or it may, in the interest of economy and efficiency, combine the work of several employees so that their duties will be thereafter performed by a lesser number of men."

In *State ex rel. Burris v. Seattle*, 82 Wash. 464, 144 Pac. 695, this court stated:

"An ordinance fixing a salary, and providing it shall be filled under civil service rules, does not create a contract between the municipality and the person selected to fill it, nor does it give to the occupant after he is selected a life tenure. The office may be abolished in the interests of economy, when the necessity therefor no longer exists and the occupant thereby removed has no legal cause of complaint because thereof. The appellant's case falls within the rule. The services which

he was employed to perform were no longer required, and the city, like an individual under the same circumstances, had the lawful right to dispense with them.

"It is true, the appellant contends that the position has not been abolished, that the labor of weighing garbage is still carried on by the city, and that he was discharged and others given his position; but we cannot so read the record. A position created by statute can be abolished indirectly as well as directly, and this position was indirectly abolished by the change in the system which rendered the services required thereby unnecessary, and by the failure to make an appropriation to pay for the services."

This holding has been followed in *State ex rel. La Grave v. Seattle,* 109 Wash. 629, 187 Pac. 339; *State ex rel. Dunbar v. Seattle,* 121 Wash. 247, 208 Pac. 1092; and *State ex rel. Cooper v. Seattle,* 199 Wash. 568, 92 P. (2d) 249.

We quote the following from *Storey v. Seattle,* 124 Wash. 598, 215 Pac. 514:

"It is next contended that the ordinance is in contravention of the city charter and void because it conflicts with its provisions relating to the civil service, and especially with the requirement that no appointments to any office shall be made except under and according to the civil service rules. However, it is well settled that the city council has the power to abolish a position in the classified civil service and vest the duties imposed on the holder of the position in another agency."

Of like import are *State ex rel. Thompson v. Seattle,* 185 Wash. 105, 53 P. (2d) 320, and *Miller v. Seattle,* 191 Wash. 141, 70 P. (2d) 786.

The men who performed the services that would ordinarily have been discharged by the civil service employees were employed by an agency of the Federal government and not by the city of Seattle. *Brooks v. Seattle,* 193 Wash. 253, 74 P. (2d) 1008.

The Works Progress Administration project was a contract entered into between the Federal government and respondent, by which the Federal government donated the labor necessary to accomplish the purpose of the contract without cost to respondent. Under such circumstances, the civil service employees had no cause to complain. That policy of performing city work was open to the discretion of the city authorities, and its adoption cannot be questioned by the courts.

Appellants have cited the following cases as determinative of the question under consideration: *Danker v. Department of Health*, 153 Misc. 502, 276 N. Y. Supp. 239, reported also in 266 N. Y. 365, 194 N. E. 857; *Liebowitz v. Goldwater*, 161 Misc. 115, 291 N. Y. Supp. 222; *Goss v. Justice of District Court of Holyoke*, 18 N. E. (2d) (Mass.) 546; and *State Compensation Ins. Fund v. Riley*, 9 Cal. (2d) 126, 69 P. (2d) 985, 111 A. L. R. 1503.

In the *Liebowitz* case, *supra*, the petitioner, a suspended civil service employee who alleged that the work in which he was formerly engaged was being carried on by relief workers, was granted a motion for alternative mandamus. The holding of the New York court was bottomed upon statutes specifically applicable to the situation presented by the motion.

Section 16 of chapter 178, Laws of New York, 1934, p. 654, known as the Economy act, reads as follows:

"No person shall be employed from any emergency relief rolls to perform the duties of any employee whose office shall have been eliminated or who shall have been discharged or suspended from employment pursuant to the provisions of this act."

This provision is complemented by § 1, chapter 386, Laws of New York, 1936, p. 1060 (Book 9, McKinney's Consol. Laws of N. Y. (Sup.), Civil Service Law, § 31-b), which reads:

"Any person whose name has been placed on a preferred list since the first day of January, nineteen hundred thirty-four, or hereafter, as provided by section thirty-one of this chapter may maintain a mandamus proceeding for his re-instatement to the position from which he was separated or suspended, where it is shown that another person not appointed in accordance with the provisions of this chapter is employed in the same or a similar position, or assigned to or permitted to perform substantially similar duties or services theretofore performed by any such suspended employee. The fact that a person on 'work relief' is performing such duties or services, or the failure of the state or any civil division thereof, or city to provide funds for the continuance of the regular position by budget appropriation or otherwise shall not deprive such person on a preferred list of his right to re-instatement as provided herein."

The facts of the *Danker* case, *supra,* reveal a situation similar to that noted in the *Liebowitz* case. Inasmuch as we are without similar legislation in this state, the decisions of the New York courts lose their persuasive character.

In the *Goss* case, *supra,* the court reviewed an order of the board of public works which stated: " 'The working schedule for the labor division in this department shall not exceed thirty hours per week.' " The facts showed that the board had sufficient funds to employ the civil service employees, but made the order to enable the entire working force to obtain a measure of employment. The holding of the court was based upon a civil service rule which provides that, in cases of suspension, the oldest employee in point of service should be retained the longest and should be reemployed first. In the instant case, there is no similar question of seniority or of shortening the hours so that all city employees could obtain work.

The question before the court in the *State Compen-*

*sation Ins. Fund* case, *supra,* involved the right of the fund to employ, as special counsel, one who was not a civil service appointee. The question presented had nothing to do with the right of certified and classified civil service employees who had been suspended because their work was performed under a contract or agreement with a Federal agency.

We hold that the selection by the city of a method by which its work was to be done involved a question of policy to be determined by its governing body. Respondent was not guilty of an abuse of its powers in selecting the instrumentality of the Works Progress Administration.

The case is remanded to the trial court, with directions to enter judgment in conformity with this opinion.

MAIN, MILLARD, and ROBINSON, JJ., concur.

BLAKE, C. J. (dissenting in part)—I dissent from the opinion in so far as it holds that the employment of WPA workers on regular maintenance jobs does not violate appellants' civil service rights.