[No. 27862. Department One. August 29, 1940.]

THE STATE OF WASHINGTON, *on the Relation of M. L. Morris et al., Respondents,* v. THE CITY OF SEATTLE *et al., Appellants.*[1]

[1]Reported in 104 P. (2d) 1118.

A. C. Van Soelen and Glen E. Wilson, for appellants.

Colvin & Rhodes and Peyser & Bailey, for respondents.

BLAKE, C. J.—The relators, twelve in number, hold ratings for the position of "Truck Driver" on the eligible list set up and maintained by the civil service commission of Seattle pursuant to provisions of the city charter. They made application in the superior court for a writ of mandate to require the defendants—the city and the heads of various departments—

" . . . to file with the Civil Service Commission a request for the certification . . . of qualified truck drivers to fill the positions of truck drivers in said departments of the City, now filled by persons not entitled thereto; or in the alternative, abandon the use of said trucks not operated by Civil Service truck drivers; . . ."

Relators averred that, of 183 trucks operated by the city, only fifty-five were manned by persons holding the civil service rating of "Truck Driver." Defendants denied the material allegations of the petition.

After an extensive hearing, the court found that six-

teen trucks, operated in the light department, were not manned by persons holding the civil service rating of "Truck Driver." Of these sixteen, eleven were "line trucks" operated in and about the city. The other five were dump trucks used for line patrol service outside the city. With respect to these sixteen trucks, the court entered judgment directing that a peremptory writ of mandate issue requiring the defendants either to man them with persons holding the civil service rating of "Truck Driver" or abandon their use. From the judgment so entered, defendants appeal.

That none of the drivers of these sixteen trucks holds the civil service rating of "Truck Driver," is admitted. The drivers of the eleven line trucks operate them by virtue of temporary appointment to the position of "Materialman"—a regularly classified civil service position. Their civil service classification is that of "Lineman's Helper," a position each held prior to being detailed to that of "Materialman."

It is the position of appellants that neither respondents nor anyone else on the eligible list for "Truck Driver" has any valid claim of right to operate any of these sixteen trucks, because truck driving is merely incidental to other duties required of the operators, or, at best, not the "controlling duty" in so far as civil service classification is concerned.

This court in a long line of decisions has sustained the right of the city council, in the interest of economy and efficiency, to abolish and consolidate civil service positions; to impose duties on an employee which may embrace not only services of the position for which he holds a civil service rating, but services which, if considered alone, might come within the purview of duties of positions under other civil service classifications. The only limitation upon this power is

that it be exercised in good faith. *State ex rel. Voris v. Seattle,* 74 Wash. 199, 133 Pac. 11, 4 A. L. R. 198; *State ex rel. Burris v. Seattle,* 82 Wash. 464, 144 Pac. 695; *State ex rel. LaGrave v. Seattle,* 109 Wash. 629, 187 Pac. 339; *State ex rel. Dunbar v. Seattle,* 121 Wash. 247, 208 Pac. 1092; *State ex rel. Thompson v. Seattle,* 185 Wash. 105, 53 P. (2d) 320.

In the light of this rule, the question here for determination is purely one of fact: whether, in the interest of economy and efficiency, the city council and the head of the light department have imposed composite duties on the operators of these sixteen trucks, of which driving of the truck is merely one.

First, we shall consider the eleven line trucks and the duties imposed upon the men who operate them. The duties of the operators fall within the definition of the duties of "Materialman," a position created by the city council in 1938. No examination, however, has ever been held by the civil service commission for the position of "Materialman." After the position was created, eleven men holding the civil service classification of "Lineman's Helper" were assigned to the positions on special or temporary detail. The civil service commission protested these assignments on the ground that the "controlling duty" of the operators of the trucks was that of "Truck Driver" under civil service classification. The city and the head of the light department, however, held to their view that the "Materialman's" duties were a composite of the duties of "Truck Driver," "Lineman's Helper," and other duties. Subsequently, the civil service commission acceded to that view and classified "Materialman" as a separate position.

That the view is held in good faith and acted upon in the interest of economy and efficiency, we do not think there is room for doubt. Furthermore, we do

not think the fact debatable that the duties of "Materialman" comprise the duties of "Lineman's Helper" and "Truck Driver," as well as other duties. And, notwithstanding the protest of the civil service commission, above referred to, and the testimony of its secretary to the effect that the "Materialman" is engaged in operating the truck seventy-five per cent of the time, we do not think that driving the truck is the "controlling duty" in determining the selection of the operator. Indeed, it seems to us that *driving* the truck is merely an incidental duty of the "Materialman," for that part of his duty consists merely in transporting the line crew and materials to and from points in or in the immediate vicinity of the city for the purpose of repairing power lines.

After arriving at the location of the day's work, the "Materialman's" duties require him to supply the linemen with the materials and equipment necessary for the work upon which they are engaged. The line trucks are stocked with supplies for all sorts of repair work on the lines. The "Materialman" is charged with the loading of the supplies at the warehouse, the accounting for such as are used during the day, and the turning in of such as are left at the end of the day. In order to perform these duties, he is required to report a half hour earlier at the warehouse than the linemen and remain a half hour later. The line trucks are equipped with a winch which is hooked up with the transmission and powered by the truck motor. The "Materialman" operates this winch when in use. These duties which we have just described have nothing to do with driving the truck.

In our opinion, the "controlling duties" of the "Materialman" consist in the handling of line materials and assisting the linemen—not of driving the truck. The fact that relators hold the civil service ratings of

"Truck Driver" affords them no ground for claiming the right to operate these line trucks.

Nor do we think they have any valid claim to the positions on the five dump trucks.

■ Two of them are in use on WPA projects where the city furnishes the material and the Works Progress Administration pays for the labor. Positions on such projects have recently been held not to be subject to civil service regulations. *Haga v. Seattle,* 3 Wn. (2d) 31, 99 P. (2d) 623.

■ The other three are used on high line patrol duty. They are under the direction of transmission linemen. They are used for various purposes as need arises. They are not in steady use. They have never been operated by men holding the civil service classification of "Truck Driver." Upon the evidence before us, we would not be warranted in saying that the use of these trucks was constant enough to justify the extra expense of maintaining a "Truck Driver" on call at the various stations where they are kept. In other words, we do not think a sufficiently steady use of them is shown to establish the position of "Truck Driver."

The respondents insist that the judgment is sustained by the holdings of this court in *State ex rel. Jarrett v. Seattle,* 186 Wash. 541, 58 P. (2d) 1212; and *Watkins v. Seattle,* 2 Wn. (2d) 695, 99 P. (2d) 427. We fail to see any analogy between those cases and this. In each of those cases, the plaintiffs (relators) had held positions as truck drivers. They were separated from their positions on the pretext of economy. The city, however, continued to operate the trucks— manning them with laborers. The positions were established by ordinance and usage. No contention was

made that the duty attendant upon each position was other than driving a truck.

The judgment is reversed.

MAIN, MILLARD, ROBINSON, and SIMPSON, JJ., concur.

